**NORTH DAKOTA STATE ENGINEER,**
**Plaintiff and Appellee,**

v.

**Lester J. SCHIRADO, Defendant**
**and Appellant.**

**Civ. No. 10931.**

Supreme Court of North Dakota.

Sept. 4, 1985.

Joseph J. Cichy and Rosellen M. Sand, Asst. Attys. Gen., State Water Commission, Bismarck, for plaintiff and appellee; argued by Joseph J. Cichy, Bismarck, appearance by Rosellen M. Sand, Bismarck.

Vinje Law Firm, Bismarck, for defendant and appellant; argued by Richard G. Carver, Bismarck.

MESCHKE, Justice.

We consider the statutory authority of the North Dakota State Engineer to regulate the size and safety of a dam. We affirm a summary judgment that the recon-

structed dam is capable of retaining more than 12½ acre-feet of water and is unsafe, and thus is subject to the regulatory authority of the State Engineer. Because it has not been shown that removal of the dam is required, we vacate the judgment which ordered removal. We remand for formulation of a proper judgment to enforce the State Engineer's statutory authority.

On December 22, 1982, the State Engineer sued Schirado for removal of his dam. The State Engineer claimed the dam was unsafe and "capable of retaining more than twelve and one-half acre-feet of water." Since it had been constructed or modified without a permit as required by N.D.C.C., § 61–04–02, the State Engineer claimed authority to act. The complaint alleged that Schirado had refused to comply with written requests "to remove the fill which was added to the previously existing dam ... despite the notice given to him of the potential danger to downstream areas."

Schirado's pro se [1] Answer was a general denial and a "crossclaim" [2] to enjoin the State Engineer "from demanding a water permit" for the dam. Schirado claimed that he "had not modified such dam as alleged, but rather had restored the same to what it was at the time of its original construction in the year 1936," and stated "that annual restorative work had been done on the spillway and dam over the past 46 years with an impoundment of water of less that [sic] 12.5 feet." He disputed the State Engineer's authority "if less than 12.5 acre-feet of water is impounded and the dam was constructed and in place prior to July 1, 1965."

The State Engineer moved for summary judgment on February 16, 1984, supported by affidavits of two of his qualified representatives showing that they had inspected the dam and had determined that it was "classified as an unsafe dam by current engineering criteria" and that it was "capable of retaining more than twelve and one-half acre feet of water," specifically "at least 36.0 acre-feet." An affidavit of the State Engineer showed that "no water permit has been obtained for the water appropriated by the existence of the dam," that Schirado's application to the State Engineer for a permit to enlarge the dam dated December 2, 1982, had been denied "because the proposed modifications would result in an unsafe structure," but that Schirado had nevertheless "repaired and reconstructed portions of the dam without obtaining the necessary permits."

On March 13, 1984, Schirado sought summary judgment in his favor and resisted the State Engineer's motion for summary judgment because (1) the dam was not "capable of storing or retaining 12.5 acre feet of water," and (2) the State Engineer had failed to "file a timely responsive pleading to the defendant's crossclaim." [3] Schirado's affidavit asserted ownership of the dam, that it had been constructed in 1936, and that he "had done annual repair work to such dam since the summer of 1968 and every year thereafter." He described some changes to the dam during 1982 and 1983 and asserted that "affiant during the months of September and October 1983 with the assistance of his son, Mark Schirado, with the aid of a tripod, rod, hand level and measuring tape measured the dimensions of such dam and that the computed maximum acre feet of water in such dam was 11.7 acre feet." The affidavit claimed "that such dam was in existence with like storage capacity of less than 12.5 acre feet

---

1. Defendant Lester J. Schirado has been admitted to the practice of law in North Dakota, and is currently County Judge of Morton County.

2. This designation was obviously mistaken. Black's Law Dictionary, p. 338: " 'Cross-claims' are litigated by parties on the same side of the main litigation, while 'counterclaims' are litigated between opposing parties to the principal action."

3. A reply is required only as to "a counterclaim denominated as such." Rule 7(a) N.D.R.Civ.P. Rule 8(c) provides: "When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation."

for almost 48 years, thus, no permit is required to appropriate water as the same is grandfathered in."

On May 3, 1984, the State Engineer obtained an ex parte temporary restraining order and an order to show cause why a preliminary injunction should not issue, based upon an engineer's affidavit that the dam had "failed," "gave way," "forming a V-shaped opening," and that, "as a result of the dam's failure there have been damaging downstream impacts including an increase in the sediment deposited in the reservoir behind Crown Butte Dam." Schirado was ordered to "refrain from repairing, modifying, constructing, maintaining or performing any remedial work whatsoever on his dam pending the hearing on the motion for a preliminary injunction."[4]

On May 10, 1984, counsel appeared for Schirado, filed a return to the order to show cause, and resisted the State Engineer's motion for summary judgment, arguing that the statutes relied upon by the State Engineer did not apply and that there were genuine issues of material fact.

On June 18, 1984, the district court denied both the State Engineer's and Schirado's motions for summary judgment because "there remain certain disputed questions of fact for trial herein, including whether the dam is capable of retaining, obstructing or diverting more than twelve and one-half acre feet of water."

Schirado then moved for judgment on the pleadings, arguing that "the capacity of that dam is totally irrelevant" and that the only legal effect of lack of a permit was to lose priority to water rights. He also argued that the dam was for "domestic, livestock, fish, wildlife or other recreational uses," so that no permit was required. The State Engineer resisted with a brief on evolution of the statutes.

Further discovery disclosed that Rolf Herbst, a licensed professional surveyor and engineer, had surveyed the reconstructed dam on July 28, 1984, for Schirado. Herbst concluded that the reconstructed dam had a "possible storage volume at present overflow elevation" of 42.5 acre-feet and that the volume of water behind the dam on that date was 12.51 acre-feet.[5]

The State Engineer renewed his motion for summary judgment, with additional affidavits of his representatives, who had also resurveyed the dam on September 4–6, 1984, as rebuilt "in May of 1984." They concluded that the reconstructed dam "would retain approximately 42.3 acre-feet of water at the emergency spillway" and that it was unsafe, "subject· to failure due to spring runoff and/or a large· rainfall event." The State Engineer urged that, as a result of these recent determinations by his experts and by Schirado's expert, both concluding that the reconstructed dam capacity exceeded 42 acre-feet, "the question of fact with regard to the capacity of the dam is resolved."

Schirado's counsel argued that the State Engineer's motion for summary judgment "should again be denied ... for all of those reasons set forth in the motion for judgment on the pleadings and other documents supporting that position." He also argued laches and stressed that the dam had been in existence since 1936, asserting:

> "It has been and continues to be the position of this party that the capacity of the dam in question here is not material."

No affidavits or other evidence was offered on behalf of Schirado to dispute the size or

---

4. A preliminary injunction was issued on May 29, 1984. On June 29, 1984, the State Engineer made application for prosecution of Schirado for criminal contempt for violating the temporary restraining order, showing that a "reinvestigation of the dam on May 14, 1984" indicated that Schirado had "reconstructed his dam." The record does not show resolution of this proceeding, but it is not involved in this appeal.

5. Inexplicably, Schirado's sworn "Further Answers to Interrogatories and Requests for Production," producing the engineer's survey notes, continued to insist: "In light of the varying calculations arrived at by the Water Commission, Soil Conservation Service and Rolf Herbst, I am satisfied that the present capacity of the dam is still 12½ acre feet or less."

safety of the dam as reconstructed in May, 1984.

The district court's memorandum decision denied Schirado's motion for judgment on the pleadings. The district court concluded that Schirado "is conceding that the capacity of the dam is in excess of twelve and one-half acre-feet," because of his "lack of response, resisting affidavits or other evidence disputing the affidavits submitted by the State Engineer" with the renewed motion for summary judgment. The district court rejected the argument of laches, as an affirmative defense not plead and as not supported by any evidence as to the reconstructed dam.

The district court analyzed the authority of the State Engineer to control dams, concluding that, under § 61–04–02 and its predecessors, the State Engineer had longstanding authority to control construction of dams over 12.5 acre-feet in capacity. Schirado's argument that the only purpose of requiring a permit was to establish priority for appropriation of water was rejected as incorrect. Under chapter 61–16.1, the district court held that the State Engineer also had authority to control both construction and modification of such dams for safety reasons, concluding that "the undisputed facts show a major breach in the dam requiring substantial construction" which could not be "equated with ordinary maintenance or repairs."

The district court held that "Schirado's dam is capable of retaining more than twelve and one-half acre-feet of water and the dam is unsafe." Since admittedly Schirado did not have a permit for appropriation of water under § 61–04–02, or for construction or restoration of the dam under §§ 61–16.1–38 and 61–16.1–39, the district court concluded the State Engineer was entitled to judgment as a matter of law.

Judgment was entered against Schirado compelling him to "at his own expense, remove the dam within sixty days" and permanently enjoining him "from reconstructing the dam without first obtaining permits for construction and for water appropriation." After denial of stay by the district court, the judgment was stayed by this Court pending disposition of the appeal upon approval of a supersedeas bond of $5,000.

Schirado, represented by new counsel on this appeal, argues that the record shows genuine issues of material fact about the capacity and safety of the dam, as well as laches. He urges that the relief granted, removal of the dam with an unqualified injunction against rebuilding it, exceeded relief authorized by law.

## I. REGULATORY AUTHORITY

The State of North Dakota has constitutional power to regulate flowing waters of the state for the benefit of the public. The North Dakota Constitution, Art. XI, § 3, still as enacted in 1889, provides:

"All flowing streams and natural watercourses shall forever remain the property of the state for mining, irrigating and manufacturing purposes."

The legislature has largely delegated the power of regulating the use of water by impoundment, as well as control of the structures for impoundments of water, to the authority of the State Engineer.

N.D.C.C. § 61–04–02 provides:

*"Permit for beneficial use of water required.* Any person, before commencing any construction for the purpose of appropriating waters of the state or before taking waters of the state from any constructed works, shall first secure a water permit from the state engineer unless such construction or taking from such constructed works is for domestic or livestock purposes or for fish, wildlife, and other recreational uses or unless otherwise provided by law. However, immediately upon completing any constructed works for domestic or livestock purposes or for fish, wildlife, and other recreational uses the water user shall notify the state engineer of the location and acre-feet [1233.48 cubic meters] capacity of such constructed works, dams, or dugouts. Regardless of proposed use, however, all water users shall secure a water

permit prior to constructing an impoundment capable of retaining more than twelve and one-half acre-feet [15,418.52 cubic meters] of water or the construction of a well from which more than twelve and one-half acre-feet [15,418.52 cubic meters] of water per year will be appropriated. In those cases where a permit is not required of a landowner or his lessee to appropriate less than twelve and one-half acre-feet [15,418.52 cubic meters] of water from any source for domestic or livestock purposes or for fish, wildlife, and other recreational uses, those appropriators may apply for water permits in order to clearly establish a priority date; the state engineer may waive any fee or hearing for such applications. An applicant for a water permit to irrigate need not be the owner of the land to be irrigated." [6]

Thus, any "constructed works" for the appropriation of water requires a permit from the State Engineer unless, both, it is for "domestic or livestock purposes or for fish, wildlife and other recreational uses," *and* it is not "capable of retaining more than twelve and one-half acre-feet." Any dam for any purpose which is "capable of retaining more than twelve and one-half acre-feet" requires authorization. It is clear that more control is contemplated than simply a register for priority of use.

The State Engineer has continuing responsibility to inspect "works" under his jurisdiction and to require any changes to assure their safety, § 61-04-11, N.D.C.C. Specifically, the State Engineer's regulatory authority extends to "dams or other devices for . . . storage of water which are capable of retaining, obstructing, or divert-

ing more than twelve and one-half acre-feet of water . . ."; § 61-16.1-38, N.D.C.C. This section specifies:

"The state engineer shall refuse to allow the construction of any unsafe or improper dike, dam, or other device which would interfere with the orderly control of the water resources of the district, or may order such changes, conditions, or modifications as in the judgment of the state engineer may be necessary for safety or the protection of property."

Section 61-16.1-39 makes it plain that "changes or modification of any existing dams, dikes, or other works or devices" cannot be made "without complying fully with the provisions" of chapter 61-16.1, "unless specifically exempted therefrom" such as a dam not "capable of retaining more than twelve and one-half acre-feet."

Thus, to prevail in this action, the State Engineer had to show either, (1) that Schirado's dam was not used for any excepted purpose, such as "domestic or livestock," [7] or (2) that it was "an impoundment capable of retaining more than twelve and one-half acre-feet." Since his proposed regulatory action was premised upon reasons of safety, the State Engineer also had to show that the "works" were unsafe.

The State Engineer is authorized to bring suit to enforce his regulatory orders; § 61-04-29, N.D.C.C.

## II. NO GENUINE ISSUE

Only where "there is no dispute as to either the material facts or the inferences to be drawn from the undisputed facts, or whenever only a question of law is involved" is summary judgment "available

---

6. There was a comparable regulatory statute in effect in 1936, which was the predecessor to § 61-04-02:

   "Any person, association or corporation hereafter intending to acquire the right to the beneficial use of any waters, shall; before commencing any construction for such purpose . . . make an application to the state engineer for a permit to appropriate, . . ." S.L. 1905, Ch. 34, § 19.

   The exception for impoundments capable of retaining not more than twelve and one-half

   acre-feet of water and used for "domestic or livestock purposes or for fish, wildlife, and other recreational uses" was first injected into § 61-04-02 by amendments in 1965. 1965 S.L.Ch. 447, § 5.

7. Strangely, there was no showing by Schirado as to the use of the dam. However, the State Engineer made no attempt to show that it was used for other than "domestic or livestock purposes or for fish, wildlife, and other recreational uses."

for promptly and expeditiously disposing of a controversy without a trial." *First National Bank of Hettinger v. Clark*, 332 N.W.2d 264, 267 (N.D.1983). Summary judgment should be granted only if "there is no genuine issue as to any material fact and ... any party is entitled to a judgment as a matter of law." Rule 56(c), N.D.R. Civ.P.

On the other hand, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Rule 56(e), N.D.R.Civ.P. Neither the district court, nor this court, has any "legal obligation, judicial duty, or responsibility to search the record for evidence." *First National Bank of Hettinger v. Clark, supra*, at 267.

■ Since Schirado offered no affidavits or evidence in opposition to the State Engineer's renewed motion for summary judgment as to the reconstructed dam, summary judgment was clearly correct. Following Schirado's extensive rebuilding and modification of the dam in April and May, 1984, it was clearly shown that the dam is "capable of retaining more than twelve and one-half acre-feet and the dam is unsafe." That is all that is required to invoke the State Engineer's authority.

Schirado's appellate counsel valiantly insists that, "in its pleadings, in its responses, in its briefs, the Defendant controverted and contested every single major issue...." That is not enough; "an adverse party may not rest upon ... mere allegations or denials...." Rule 56(e), N.D.R. Civ.P. If "its responses" refers to Schirado's own answers to the State Engineer's interrogatories, we point out that they were mere unsubstantiated allegations. The rule requires that "opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Rule 56(e) N.D.R.Civ.P.

It is also argued that the initial denial of the State Engineer's motion for summary judgment came in June, 1984, after Schirado's extensive reconstruction activities in April and May, 1984, so that the renewed motion for summary judgment came on "next to no new evidence." However, the original motion for summary judgment had been made and supported by affidavits in February, 1984, prior to the spring washout and reconstruction of Schirado's dam in April and May, 1984. The facts of those events had not yet been fully placed before the district court when it ruled on the initial motion for summary judgment.[8]

The district court did not err in concluding that "Schirado's dam is capable of retaining more than twelve and one-half acre-feet of water and is unsafe." There were

---

8. Appellate counsel for Schirado does not refer specifically to Schirado's original opposing affidavit of March 13, 1984, as creating material issues of fact on the renewed motion for summary judgment. Nor did Schirado's other counsel specifically do so below. While that affidavit may have been sufficient to create genuine issues of material fact on the initial motion, it did not deal with the changed conditions after May, 1984. While it might have been better procedure for the State Engineer to supplement his complaint as to those subsequent events, (see Rule 15(d) N.D.R.Civ.P.), Schirado did not object on this ground below, nor make it an issue on this appeal. In any event, the State Engineer is entitled to rely upon current evidence of the size and safety of the dam to assert

his authority to regulate it. *See* N.D.R.Ev., Rule 407: "This rule does not require the exclusion of evidence of subsequent measures if offered for another purpose," other than "to prove negligence or culpable conduct." The real function of summary judgment procedure is to go beyond the pleadings and present evidentiary materials for the purpose of showing that, despite the pleadings, there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 6 Moore's Federal Practice (2d edition) § 56.09. Compare N.D.R. Civ.P. 12(c), Motion for Judgment on the Pleadings. "Indeed at times it will be feasible and desirable to treat the pleading as though it were amended to conform to the facts set forth in the affidavits;" *Ibid*, § 56.10, p. 56–171.

no genuine issues as to these material facts. Therefore, the district court's order for summary judgment was correct.

### III. LACHES

■ An affirmative defense of laches properly raised and supported presents questions of fact, *Strom v. Giske*, 68 N.W.2d 838, 847 (N.D.1955), which are inappropriate to decide on summary judgment. Schirado acknowledges that "the question of laches may not have been specifically pleaded with the answer," and urges that he "should be permitted to specifically plead the issue of laches by way of amendment."

■ In his "crossclaim," Schirado disputed the jurisdiction of the State Engineer "because the defendant had not modified such dam as alleged but rather had restored the same to what it was at the time of its original construction in the year 1936." This certainly did not "set forth affirmatively" the defense of laches as Rule 8(c), N.D.R.Civ.P. requires. While the trial court may freely give leave to amend a pleading at any time, Rule 15(a), N.D.R.Civ.P., no effort was made by Schirado to seek such an opportunity from the district court, either before or after summary judgment; *see* Rule 15(b), N.D.R.Civ.P. Procedural regularity does not permit an opportunity to amend a pleading on appeal where it was not sought below.

■ Furthermore, laches is not applicable to the recent reconstruction activities by Schirado in 1982, 1983 and 1984. If, as it plainly appears, those recent and substantial activities significantly increased the capacity of the dam and made it unsafe, the previous existence of a smaller dam is no defense.

### IV. JUDGMENT

While the State Engineer's complaint stated that Schirado had refused to honor his request "to remove the fill which was added to the previously existing dam," the prayer for relief sought "injunctive relief ordering the removal of the dam." The judgment ordered "that the defendant shall, at his own expense, remove the dam within sixty days," and provided that in the event of his failure to do so, the State Engineer was directed to do so at Schirado's ultimate expense. The judgment also enjoined Schirado "from reconstructing the dam without first obtaining permits for construction and for water appropriation."

Schirado argues that the judgment went beyond relief authorized by law. The State Engineer did not meet this argument in his appellate brief.

■ Destruction of property is to be avoided in the exercise of regulatory powers unless there is no reasonable and appropriate alternative. *See, Pic v. City of Grafton*, 339 N.W.2d 763, (N.D.1983), and *City of Minot v. Freelander*, 368 N.W.2d 514 (N.D.1985).

Several factors indicate that there is alternative relief which would implement the State Engineer's statutory authority. The statutes exempt from direct regulation those dams capable of retaining less than twelve and one-half acre-feet of water, particularly when used for "domestic or livestock purposes or for fish, wildlife, and other recreational uses." While this record is not clear as to the purpose of this dam, the State Engineer has implicitly recognized that his authority extends to this dam only if it exceeds 12.5 acre-feet in water capacity. The record suggests that this dam existed for over 45 years with a lesser capacity before the extensive reconstruction activities by Schirado in 1982, 1983 and 1984. And, the State Engineer initially only requested Schirado "to remove the fill which was added to the previously existing dam." Unless there is a greater problem than has been developed in this limited affidavit record, there appears to be no reason why a dam with a total capacity of less than 12.5 acre-feet of water could not be made adequately safe to protect property and public interests downstream.

Judgment should be ordered only to the extent authorized, not to the extent asked. Even a default judgment for relief other

than a sum certain should not be entered until the court has required "such proof as may be necessary to enable it to determine and grant the relief, if any, to which the plaintiff may be entitled;" N.D.R.Civ.P. 55(a)(2). Likewise, summary judgment should be ordered only to the extent the moving party "is entitled ... as a matter of law" and "if appropriate;" Rule 56(c) and (e), N.D.R.Civ.P.

■ We conclude that this summary judgment ordering removal and prohibiting any dam without a permit went further than authorized by law. Where a summary judgment cannot be rendered "for all of the relief asked and a trial is necessary," the court should direct "such further proceedings in the action as are just." N.D.R. Civ.P. Rule 56(d), *Case Not Fully Adjudicated on Motion.* Therefore, we vacate the judgment entered and remand to the district court for proceedings to formulate a proper judgment to enforce the State Engineer's regulatory authority. Of course, the district court may also provide in the judgment for the costs of inspection and enforcement as authorized by N.D.C.C. § 61–04–11.

## V. CONCLUSION

We hold that the State Engineer has statutory authority to regulate the size and safety of this dam to the extent that it is capable of retaining more than twelve and one-half acre-feet of water. Since there were no genuine issues as to size and safety of this dam, nor as to laches, we affirm the order for summary judgment so far as it determines that this dam is subject to the regulatory authority of the State Engineer.

Because it has not been shown that complete removal of the dam is required, we vacate the judgment and remand for formulation of a proper judgment to enforce the State Engineer's statutory regulatory authority.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.