Laddie PIC, Plaintiff and Appellant,

v.

CITY OF GRAFTON, North Dakota, a municipal corporation, Defendant and Appellee.

Civ. No. 10448.

Supreme Court of North Dakota.

Oct. 31, 1983.

Neil W. Fleming (argued), of Fleming & Dubois, Cavalier, for plaintiff and appellant.

W.R. Goulet, Jr. (argued), of DePuy, Kopperud, Goulet & Hall, Grafton, for defendant and appellee.

GIERKE, Justice.

This is an appeal from a judgment of the District Court of Walsh County, which affirmed a final determination of the Grafton City Council declaring certain real property owned by the plaintiff, Laddie Pic, to be substandard and a nuisance and ordering its destruction or removal. We affirm in part and reverse in part.

In the absence of a record of the proceedings held before the city council and the absence of findings of fact by the district court, the facts, as stated herein, are those facts adduced from the documentary evidence presented to the city council and to the district court, and the transcript of the proceedings on appeal to the district court.

The plaintiff and appellant, Laddie Pic [Pic], is the owner of a residence located at 46 Wakeman Avenue, Grafton, North Dakota. On April 19, 1982, the residence and a detached garage were inspected by the City Building Inspector, Gregory Dusek, who determined the structures to be substandard, as that term is defined by Grafton City Ordinance No. 327. In accordance with the

procedures set forth in that ordinance, the inspector filed a report with the City Auditor specifying the provisions of the ordinance with which he deemed the structures not to be in compliance. The report also listed specific observations in support of his conclusion that the structures were substandard and a recommendation that they be either demolished or removed.

Pursuant to the ordinance, the city auditor then served upon Pic a "Notice of Substandard Building or Structure". The notice informed him that a hearing on the matter would be held by the city council on June 14, 1982, "to determine the final action to be taken by the City of Grafton with regard to demolishing said building or structure". Pic was further notified that he could "appear at this meeting and present any pertinent facts concerning the matter to the City Council".

Upon receipt of this Notice, Pic contacted an attorney, who wrote a letter on his behalf to the city auditor, taking exception to the building inspector's determination and informing the city that, if the buildings were found to be substandard, he would repair them.

At the June 14, 1982, meeting of the Grafton City Council, the building inspector's report and recommendation were considered. Pic was present at the meeting but chose not to address the council. The council concluded that the structures were substandard and ordered that, following the requisite thirty-day period after notice of final determination in accordance with Ordinance No. 327, the buildings were to "be removed from the premises and the cost assessed to the lots on which the structures now exist".

Pic appealed the city council's final determination to the District Court of Walsh County. In the absence of a record of the proceedings at the city council, the district court considered the documentary evidence presented to the council and heard further testimony concerning the condition of the buildings, communications between Pic or his attorney and city officials regarding the property, and the proceedings before the city council. On December 13, 1982, the district court issued its order affirming the city council's determination and found that "the Defendant did not act arbitrarily, oppressively or unreasonably and that there was substantial evidence to support its determination". Judgment was subsequently entered and from that judgment Pic appealed.

On appeal to this court, Pic sets forth a single issue for our review: "Whether or not the City of Grafton acted arbitrarily and unreasonably in the condemnation of the residence owned by Mr. Pic". Use of the term "condemnation" in the context of this case engenders some confusion with eminent domain actions. In order to avoid that confusion and to set forth the questions as they were actually presented in this court and in the district court, we will restate the issues as follows: (1) Whether or not the City of Grafton acted arbitrarily or unreasonably in determining that the buildings located at 46 Wakeman Avenue were substandard; and (2) Whether or not the City of Grafton acted arbitrarily or unreasonably in ordering the removal of those buildings.

We turn first to the question of the scope of this court's review of the actions taken by the municipal authorities.

Section 40–05–02(24) of the North Dakota Century Code provides as follows:

"24. Removal of substandard buildings or structures. The governing body of any city shall have the authority to provide by ordinance for the demolition, repair, or removal of any building or structure located within the limits of such city or other territory under its jurisdiction, which creates a fire hazard, is dangerous to the safety of the occupants or persons frequenting such premises, or is permitted by the owner to remain in a dilapidated condition. Any such ordinance shall provide for written notice to the owner of a hearing by the governing body before final action is taken by such body. It shall also

provide a reasonable time within which an appeal may be taken by the owner from any final order entered by such governing body to a court of competent jurisdiction. This subsection shall in no way limit or restrict any authority which is now or may hereafter be vested in the state fire marshal for the regulation or control of such buildings or structures."

■ Pursuant to the authority granted by this statute, the City of Grafton has adopted City Ordinance No. 327. Such an ordinance, which has for its purpose the protection of the public health, safety, morals and welfare, is founded upon the police power inherent in the state. *Soderfelt v. City of Drayton,* 79 N.D. 742, 59 N.W.2d 502, 507 (1953). In reviewing the actions taken by legislative authorities pursuant to the police power, a reviewing court must not substitute its judgment for that of the legislative body. *Munch v. City of Mott,* 311 N.W.2d 17, 22 (N.D.1981). In the instant case, the city council was exercising the police powers delegated to the municipal authority by virtue of section 40–05–02(24), N.D.C.C. Our review is therefore limited to determining:

"First, whether or not the city council was within its jurisdiction;

Second, whether or not it was mistaken as to the applicable law;

Third, whether or not it acted arbitrarily, oppressively, or unreasonably; and

Fourth, whether or not there was substantial evidence to support or justify its determination."

*Munch v. City of Mott, supra* 311 N.W.2d at 22 [citing *Soo Line Railroad v. City of Wilton,* 172 N.W.2d 74 (N.D.1969) ].

In the instant case, the district court conducted a "de novo" hearing. A "de novo" hearing, as applied to judicial review of the Grafton City Council's determinations, means a trial to determine whether or not the council acted arbitrarily, oppressively, or unreasonably in declaring Pic's property to be substandard and ordering its removal. *See Shaw v. Burleigh County,* 286 N.W.2d

792, 797 (N.D.1979). Our scope of review is identical to that of the district court. *Id.* It is our function to independently determine the propriety of the city council's actions without according any special deference to the district court's judgment. *Id.*

■ The first issue raised on appeal is whether or not the city council's determination that Pic's buildings were substandard was arbitrary, oppressive, or unreasonable. We conclude that the council had before it substantial evidence to support its determination in this regard. The building inspector's report contained numerous references to specific instances of disrepair and neglect which might render the buildings a danger to the public welfare. Pic offered no evidence whatsoever by which the city council could logically conclude other than that the buildings were substandard. The council's determination was therefore not arbitrary, oppressive, or unreasonable.

■ The second issue presented for our review was the major focus of Pic's appeal, both to the district court and on appeal to this court. Pic contends that the city council's order for removal of the buildings, in the absence of evidence to indicate that they could not be repaired, was arbitrary, oppressive, or unreasonable. We agree.

We begin by noting that a statute and an ordinance promulgated thereunder which authorizes the destruction of private property without compensation is drastic. In *State Fire Marshal v. Sherman,* 201 Minn. 594, 277 N.W. 249, 251 (1938), the Minnesota Supreme Court, on an appeal from an order of demolition issued by the state fire marshal, stated, quoting from *State Fire Marshall v. Fitzpatrick,* 149 Minn. 203, 183 N.W. 141 (1921), in regard to statutes conferring such authority, at page 14, that:

" 'It authorizes the destruction of property without compensation. The state in the exercise of its police power may do this, but the necessity for thus sacrificing private property must clearly appear. The law itself holds out an alternative by which the owner may be directed to alter or repair so as to eliminate danger.

When the police power of the state is exerted against property, it is ordinarily to regulate its use, not to destroy it. Destroying or depriving the owner thereof is a last resort, unless the property is of such nature that its use or possession cannot be other than for evil. It was said in *York v. Hargadine,* 142 Minn. 219, 171 N.W. 773, 3 A.L.R. 1627, that the fire marshal and the courts should exercise the power conferred by the law in question with great caution. "Where repairs or alterations can be made lawfully upon a wooden building so as to eliminate the special dangers arising from its location and condition to surrounding property and to persons, such repairs or alterations should be ordered rather than a tearing down of the building." The police power cannot be extended by the authority which is intrusted with its exercise to an arbitrary misuse of private rights. (Citations omitted.)' "

*See also Childs v. Anderson,* 344 Mich. 90, 73 N.W.2d 280, 282, 283 (1955); *Application of Iverson,* 151 Neb. 802, 39 N.W.2d 797, 800 (1949).[1]

Upon reviewing the evidence before the city council when it issued its order for removal and the ordinance which purportedly authorized this action, we conclude that the necessity for the order of removal has not been clearly established. The record discloses no evidence upon which the city council could reasonably conclude that the buildings were not repairable nor does the ordinance set forth any standards whatsoever whereby the council is to determine whether a structure is to be repaired, demolished, or removed.

This court has, in the past, reviewed actions taken by municipal authorities under the authority granted by city ordinances enacted pursuant to Section 40–05–02(24),

N.D.C.C. In *Soderfelt v. City of Drayton,* 79 N.D. 742, 59 N.W.2d 502 (1953), the City of Drayton, following notice and hearing, issued an order that a certain building be removed or demolished. The owner of the building appealed this order to the district court contending that the action of the city council was arbitrary, unfair, and unreasonable. The issue in *Soderfelt, supra,* as in the instant case, was whether or not the building was repairable. This court framed the question in the following manner:

"... whether the evidence at the hearing before the city council was sufficient to warrant the city council in concluding that the building had deteriorated to such a degree that it was beyond repair, or whether the city council abused its discretion in ordering its removal and demolition."

*Id.* 59 N.W.2d at 510.

Section 3 of the ordinance in *Soderfelt* contained the following subsections:

"(a) If the substandard building or structure can reasonably be repaired so that it will no longer exist in violation of the terms of this ordinance it shall be ordered repaired."

\*　　\*　　\*　　\*　　\*　　\*

"(c) In any case where a substandard building or structure is 50% damaged or decayed, or deteriorated from its original value or structure, it shall be demolished and in all cases where a building cannot exist in violation of the terms of this ordinance it shall be demolished."

The Drayton City Council made specific findings of fact, supported by substantial evidence, that the building in question had deteriorated more than 50% of its value. The council's determination was therefore affirmed by this court. In the instant case, neither the building inspector's report, the

---

1. The cited cases considered statutes authorizing the state fire marshal to order the repair, removal, or destruction of property, rather than, as is the case here, an ordinance authorizing a municipality to take similar action. Whether it is a state statute or a city ordinance that is being considered, it is enacted under the police power of the state and its political subdi- visions for the protection of life, safety, morals, general health and general welfare of the public. The purpose of the enactment of ordinances in both classifications is therefore the same and it would follow that the same rule of construction or interpretation would apply to both. *Soderfelt v. City of Drayton,* 79 N.D. 742, 59 N.W.2d 502, 509 (1953).

minutes of the city council meeting, the notice of final determination, nor the testimony of the City's witnesses at the district court hearing provide evidence that might clearly establish that the structures were beyond repair under any reasonable standard which the City might choose to apply.

In the case of *Russell v. City of Fargo,* 28 N.D. 300, 148 N.W. 610 (1914), the plaintiff brought an action to obtain a decree declaring Chapter 13 of the Consolidated Ordinances of the City of Fargo null and void. The particular feature of the ordinance which was challenged provided that

"[I]t shall be unlawful to repair any frame building within the fire limits of the city, when such building shall have been damaged by the elements or decay to the extent of 50 per cent. of such building exclusive of the foundation thereof." *Id.* 148 N.W. at 613.

In upholding this ordinance we stated that:

"The authorities indicate that there must be some method of determining whether changes made in an old structure are sufficient to constitute a rebuilding or the erection of a new structure, and such provisions are based on the supposition that there is a point somewhere between a perfect or safe building and one which cannot be made safe as to fire, etc., without complete demolition and a rebuilding. Both the Legislature and the city council have fixed that point at 50 per cent. deterioration above the foundation, evidently taking the view that, where it has deteriorated more than half in value, that is, has so deteriorated that on a reconstruction, the building will be more new than old, it is the erection of a new building, rather than the repairing of an old one (citation omitted), but an arbitrary prohibition is invalid." *Id.,* 148 N.W. at 615.

Ordinance No. 327 fixes no "point somewhere between a perfect or safe building and one which cannot be made safe ... without complete demolition and rebuilding". The ordinance invests the decision of whether to repair or destroy in the complete discretion of the city council.

In reaching our decision on this issue we note that the fair market value of Pic's property, as determined by Mr. Dusek, who, besides being the building inspector is also the city assessor, had risen from $9,459 in 1979 to $18,331 in 1982. We recognize that this increased valuation may be the result of inflation and formula changes mandated by the Legislature. We also recognize that, because of a lack of human resources, not all buildings can be individually inspected for assessment purposes every year. It is also possible that, because the building has gone unoccupied for over two years, it has deteriorated to the point where necessary repairs would be so extensive as to constitute the erection of an entirely new structure. The fact, however, that the structure is, at least potentially, worth in excess of $18,000 creates further cause for concern that the owner not be deprived of it unless the necessity clearly appears from the record.[2]

We note in passing that the Grafton City Council had at its disposal an ordinance which might have provided necessary standards by which to determine whether the buildings were repairable. Ordinance No. 422, relating to flood plain management and floodproofing regulation, contains specific standards by which to determine whether a building in the flood plain is repairable. The property at issue is in the

---

2. The city contends that Pic has waived objection to the removal order by his failure to apply for a building permit so that he could repair the residence. The council, however, was aware that Pic intended to repair the building when it issued its final determination and removal order. Pic challenged the determination of the building inspector and the city council through the statutory procedures available to him. He has not refused to repair the property. On the contrary, he has continued to assert that his property is not substandard and that, even if it is, it is amenable to repair and he wishes to repair it. When the city issued its final determination and order of removal it deprived Pic of the opportunity to repair. To sustain the city's position in this regard would be to penalize Pic for availing himself of the procedures available to him.

flood plain. The City, however, did not consider the standards contained in Ordinance No. 422 when it issued its removal order. Counsel for the City indicated that the City proceeded exclusively under Ordinance No. 327. Our review therefore is limited to the action taken pursuant to that ordinance. In the absence of evidence in the record that the Grafton City Council, in issuing its order for removal, applied the evidence available to it to a reasonable, meaningful standard for determining whether a structure is repairable, we conclude that the evidence does not clearly establish the necessity for the removal of Pic's property and that the order for removal was arbitrary and unreasonable. In so doing, we do not mean to say that the structures are repairable. That is an issue to be determined by the Grafton City Council by the application of relevant facts to meaningful and reasonable standards.

For the reasons stated in the opinion, the judgment is affirmed in part and reversed in part and remanded to the district court for further proceedings.

ERICKSTAD, C.J., and VANDEWALLE, SAND and PEDERSON, JJ., concur.