**CITY OF MINOT, a municipal corporation and political subdivision of the State of North Dakota, Plaintiff and Appellee,**

v.

**Genevieve FREELANDER, a/k/a Genevieve Lee, Defendant and Appellant.**

**Civ. No. 10834.**

Supreme Court of North Dakota.

May 22, 1985.

---

Eaton, Van de Streek & Ward, Minot, for plaintiff and appellee; argued by Nevin Van de Streek, Minot.

Ella Van Berkom, Minot, for defendant and appellant.

MESCHKE, Justice.

Genevieve Freelander (Freelander) appeals from a district court judgment declaring her house in Minot, North Dakota, a public and private nuisance and ordering the house to be demolished. We affirm.

In February 1984, the City of Minot commenced an action against Freelander alleging that her house was an unsafe building, a public nuisance, and a fire hazard, and praying for judgment permitting the City to demolish the house, or alternatively for an affirmative injunction requiring Freelander to cure the defects.

The trial court heard evidence in the case on three separate occasions: June 6, 1984; August 21, 1984; and October 8, 1984. Prior to the first hearing, the parties agreed to present evidence to establish the condition of the house and to then continue the case for six to eight weeks to give Freelander an opportunity to cure the defects. The evidence presented at the June 6, 1984 hearing established that Freelander and her 82-year-old sister, Hazel Carroll, lived in the house, that the house needed extensive repairs, and that Freelander's housekeeping was wretched. The actual extent of necessary repairs could not be determined because the amount of garbage, refuse, and cat feces in the house prevented the building inspector from conducting a structural inspection of the house. After the hearing, the court entered an order in which it found that Freelander's house constituted a health hazard and public nuisance. The court continued the case for sixty days to permit Freelander to have the house cleaned, disinfected, and fumigated so that an inspection could be conducted to determine the economic possibility of restoring the house to the minimum standards required by the City. The court stated that during the sixty days bona fide progress should be made toward the restoration of the house to minimum standards.

The evidence presented at the August 21, 1984 hearing reflects that some progress had been made in improving the health and sanitation conditions of the Freelander house. At the time of the August 21 hearing, Bennie Braasch, a contractor hired by Freelander, had hauled 250 thirty-gallon garbage bags and 250 fifty-gallon garbage bags from the house and had cleaned, disinfected, and fumigated the house to eliminate the offensive odor. Braasch testified that Freelander had impeded his progress in cleaning the house by hauling garbage

bags back into the house and retrieving items from the garbage bags. Although the health and sanitation conditions had been improved, no structural repairs had been made to the premises and the building inspector still had not examined the interior of the walls because numerous boxes of Freelander's personal belongings obstructed access to the walls.

Evidence was also presented at the second hearing concerning Freelander's monetary resources. Freelander testified that she lived on income from her one-quarter interest in two 160-acre tracts of farmland located at Foxholm and Deering, North Dakota, from which she received $1700 cash rent each year. This property represented Freelander's source of income to pay for any repairs to the house. However, her brother would not consent to the sale or mortgage of the property.

After the hearing, the court continued the case until October 8, 1984, and ordered Freelander to perform the following acts by October 5, 1984: (1) install an operating toilet, sink, and shower or bath; (2) remove and permanently dispose of all refuse, garbage, junk, and debris from the premises; (3) secure an inspection report of the premises detailing the repairs necessary for compliance with the City of Minot Housing and Building Codes; (4) enter into a written contract with a suitable contractor to bring the premises into code compliance by January 1, 1985; and (5) demonstrate sufficient financial resources in liquid form to make payments under the repair contract. The court also ordered Freelander to cooperate with Braasch in removing the garbage and refuse from the house and to make arrangements for raising the money for the repairs. The court advised Freelander that she may have to sell or mortgage her farmland to secure sufficient finances to comply with the court's order.

The evidence presented at the October 8, 1984 hearing reflects that the health and sanitation conditions had deteriorated since the second hearing and that the odor of cat feces and cat urine was again present. Braasch testified that Freelander had been uncooperative in his efforts to sort through and throw away garbage. The structural defects had not been repaired nor had a contractor been hired to do the repairs. Freelander's counsel advised the court that Freelander, her sister, and brother, had consented to the sale of their farmland. However, Freelander testified that she did not want to sell the farmland at that time because she could not receive a satisfactory price but that she might be willing to sell it sometime after the first of the year.

At the conclusion of the hearing, the court found that the house was a private and public nuisance and that Freelander, who had been given the opportunity to correct the matter, had not made a bona fide effort to make the corrections. Judgment was entered ordering the City to demolish the house, and Freelander appealed.[1]

Freelander contends that the district court erred in determining that her house was a public and private nuisance. She contends that the district court's decision is fully reviewable by this Court and is not subject to the clearly erroneous standard of Rule 52(a), NDRCivP. She further contends that the district court's findings of fact were erroneous and do not justify the legal conclusion that her residence is a public and private nuisance.

In *Jerry Harmon Motors, Inc. v. Farmers Union Grain Terminal Ass'n.*, 337 N.W.2d 427, 430 (N.D.1983), we said that the ultimate resolution of whether or not a nuisance exists is a conclusion of law; however, the underlying facts and circumstances of the case must be developed before the correct law can be applied to those facts. Once the facts are determined on the evidence submitted, the law may be applied to those facts to determine if a nuisance exists. *Jerry Harmon Motors, Inc. v. Farmers Union Grain Terminal Ass'n., supra.*

---

1. The parties stipulated and the court ordered a stay in execution of the judgment until this Court rendered a decision in the matter.

■ The trial court found that Freelander's house was a public and private nuisance because of its filthy, unsanitary, and odorous condition. In its oral statement from the bench, the court stated in substance that the house was offensive to the neighborhood and a public health hazard. We conclude that the evidence presented at the three hearings supports the trial court's findings and conclusion that Freelander's house was a public and private nuisance.

■ Freelander contends that the trial court erred in ordering her house to be demolished. She asserts that the findings and conclusions of the trial court do not warrant destroying the house in view of Braasch's testimony that the structure was sound and the house was repairable.

There was conflicting testimony concerning whether or not the house could be repaired. Braasch testified that Freelander's house required extensive repairs but could be repaired in compliance with the City code and ordinances for approximately $16,000. The sanitarian for the First District Health Unit testified that the house was so soaked with cat feces and cat urine that the odor "would be almost impossible to totally get rid of." There was no testimony as to the value of the house with or without repairs.

However, the primary concern of the trial court was Freelander's attitude. The trial court found that Freelander was unable or unwilling to rectify the conditions which made her house a nuisance even though she was on notice from the first hearing on June 6, 1984, until the third hearing on October 8, 1984, that failure to do so could result in the demolition of her house. In rendering its decision, the court stated from the bench:

"The Court has given opporunity [sic] to Mrs. Freelander to correct this matter. As I say, she is an obstinate woman. She is asking for more time. However, she has not displayed bona fides after the Court has given her the opportunity to make the corrections because of her contravention and her placing roadblocks

and destroying the efforts of Mr. Braasch, who was willing to correct all the deficiencies needed to bring this house up to code standards. The Court does not want to wait a few months because a few months will ripen into a few more months and nothing will be done."

In *Pic v. City of Grafton*, 339 N.W.2d 763, 765 (N.D.1983), we stated that a statute and ordinance authorizing the destruction of private property without compensation is a drastic measure. We quoted, with approval, the following passage regarding statutes and ordinances conferring the right to destroy private property:

" ' "It authorizes the destruction of property without compensation. The state in the exercise of its police power may do this, but the necessity for thus sacrificing private property must clearly appear. The law itself holds out an alternative by which the owner may be directed to alter or repair so as to eliminate danger. When the police power of the state is exerted against property, it is ordinarily to regulate its use, not to destroy it. Destroying or depriving the owner thereof is a last resort, unless the property is of such nature that its use or possession cannot be other than for evil. It was said in *York v. Hargadine*, 142 Minn. 219, 171 N.W. 773, 2 A.L.R. 1627, that the fire marshal and the courts should exercise the power conferred by the law in question with great caution. 'Where repairs or alterations can be made lawfully upon a wooden building so as to eliminate the special dangers arising from its location and condition to surrounding property and to persons, such repairs or alterations should be ordered rather than a tearing down of the building.' The police power cannot be extended by the authority which is intrusted with its exercise to an arbitrary misuse of private rights. (Citations omitted.)" ' "

*See also Childs v. Anderson*, 344 Mich. 90, 73 N.W.2d 280, 282, 283 (1955); *Ap-*

*plication of Iverson,* 151 Neb. 802, 39 N.W.2d 797, 800 (1949)." *Pic v. City of Grafton,* 339 N.W.2d at 765–766.

The bifurcated proceedings reflect the court's caution and restraint in enforcement of the drastic remedy of destroying a house. The case was continued from June until August to give Freelander an opportunity to clean and repair the house. The matter was again continued from August until October with specific instructions to repair the house. Freelander was told that this was the "critical time" for her if she wanted to save her house. However, she was uncooperative in taking appropriate action to cure the deficiencies. Because of her attitude, the condition of the house deteriorated from August to October. The interest of the public, as well as the health and safety of Freelander and her sister, could hardly contemplate greater care than was demonstrated by the trial court in according opportunity for alteration and repair through the two continuances prior to ultimate disposition. Based on the evidence presented to the court during the three hearings, we conclude that the trial court did not err in ordering the house to be demolished.

Shortly before oral argument of this appeal, Freelander moved to remand this case to the district court for further testimony regarding improvements made on the house after the entry of judgment. The motion asserts that "... Appellant's inability to comply with the Orders of the Court for financial reasons has now been corrected by reason of the charitable contributions of persons and businesses in the community, which contributions have apparently resulted in abating the private and public nuisances upon which the Court based its Order of demolition." Freelander based her motion on affidavits which reflect that a number of plumbers, electricians, carpenters and other people have donated their time, labor, and materials to repair her house and save it from destruction. A current letter from an architect attached to the affidavits summarizes significant progress and concludes: "There is very little left to be done now...." The City of Minot did not join in the motion, although its counsel indicated that he viewed the affidavits as "hopeful and encouraging."

We are impressed by the charitable and civic efforts to save Freelander's house. The showing is substantial but falls short of demonstrating an abatement of the nuisance which would moot this case on appeal. Important policy considerations on finality of judgments require that new or additional evidence not be considered on appeal. Generally, this Court must decide on appeal solely on the evidence produced in the trial court. *Willard v. Mohn,* 24 N.D. 386, 139 N.W. 981 (1913). Therefore, Freelander's motion to remand for additional evidence is not appropriate.

However, where a substantial change of evidence takes place between the initial trial and our disposition, the trial court is not precluded by the "law of the case" doctrine from making new findings in proper circumstances. 5 Am.Jur.2d, *Appeal and Error,* § 749, p. 193; *Stormon v. Weiss,* 65 N.W.2d 475, 528 (N.D.1954). While there is a substantial showing which may make such further consideration by the trial court appropriate in this case, we do not determine that at this time.

Freelander is free to bring an appropriate motion for relief from the judgment after our mandate is issued. Counsel for the City of Minot has stated that in the event this Court affirms the lower court's decision, the City of Minot will take no action to enforce its judgment for sixty days after the district court receives this Court's mandate to allow Freelander to bring an appropriate motion for relief from the judgment. Also, under Rule 62(b), NDRCivP, the trial court may stay the execution of proceedings to enforce a judgment pending the disposition of a motion for relief from a judgment. We believe these procedures are adequate to bring these subsequent developments to the attention of the trial court for appropriate resolution.

Accordingly, the motion to remand is denied and the judgment of the district court is affirmed.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.