CITY OF MINOT, a municipal corporation and political subdivision of the State of North Dakota, Plaintiff and Appellee,

v.

Genevieve FREELANDER, a/k/a Genevieve Lee, Defendant and Appellant.

Civ. No. 11057.

Supreme Court of North Dakota.

Jan. 7, 1986.

Nevin Van de Streek, of Eaton, Van de Streek & Ward, Minot, for plaintiff and appellee.

Ella Van Berkom, Minot, for defendant and appellant.

VANDE WALLE, Justice.

Genevieve Freelander appealed from a district court order denying her request to modify a judgment that orders the demoli-tion of her house, which has been declared a public and private nuisance. We con-clude that the trial court should have granted the motion.

This is the second time this case has been before us. On the first occasion we af-firmed the trial court's determination that Freelander's house was a public and pri-vate nuisance, holding that in light of the record before the trial court as of the date of its order,[1] the court did not err in order-ing the demolition of the house. *City of Minot v. Freelander*, 368 N.W.2d 514 (N.D. 1985). At the same time we refused to consider Freelander's motion to remand based on changed circumstances, noting that after remand she was free to bring an appropriate motion in the trial court for relief from the judgment.

The evidence supporting the trial court's initial decision to demolish the house is described in detail in our previous opinion and will not be repeated here. For the purposes of this appeal, it is sufficient to state that the decision to demolish the house was based on a deterioration of the health and sanitation conditions, the contin-ued odor of cat feces and cat urine, Free-lander's lack of cooperation, the failure to repair structural defects, and Freelander's continued lack of financial resources in liq-uid form for the purpose of initiating re-pairs.

In support of her motion[2] to modify the judgment by striking the portion that pro-vides for the destruction of the house, Freelander and Elaine Mosely testified as to the change in conditions since the judge ordered the demolition of the house. Free-lander's testimony, which was supplement-ed by affidavit, indicated that the house had been newly plumbed, including the in-stallation of new toilet facilities; that it had new electrical wiring and new stairs leading to the upper floor; and that litter boxes had been provided for the cats' use.

---

1. In our previous decision we did not consider the evidence of the change in conditions subse-quent to the lower court's order because "[g]en-erally, this Court must decide [an] appeal solely on the evidence produced in the trial court." *Freelander, supra*, 368 N.W.2d at 518.

2. Freelander's motion was properly treated by the trial court as a Rule 60(b) motion.

Freelander also submitted a letter from an architect wherein he states that in his opinion "the building can be made structurally adequate by a few minor repairs, ..." Following a brief inspection of the premises by the court, Mosely testified as to the work performed on the house such as placing columns in the basement, fixing the roof, installing new plumbing and wiring, and providing a new bathroom, a new porch, a new washer, and various items of furniture.[3]

On rebuttal the City called Robert Amptman, the city engineer, who is in charge of building and plumbing inspections. Amptman testified that Freelander's house had not entirely been brought into conformity with the codes, stating that there are some structural members that need to be replaced for the front porch, that there are floor joists in the basement that are badly cracked and need to be reinforced, that a cold-air return between the basement and the first floor needs to be reinforced, and that the electrical work needs to be completed by appropriate covering with fixtures. Amptman stated that a light needed to be placed in the bathroom, that the placing of sheetrock and insulation needed to be completed upstairs and in the attic, and that minor items needed to be completed on the first floor. In addition, Amptman testified that the house appears cluttered and that the odor from the cats was more noticeable than three or four months earlier. On cross-examination Amptman stated that the things he found could be taken care of if individuals took it upon themselves to do the work, and that it was not an impossible situation.

Despite this evidence of a changed situation and the possibility of correcting the situation, the lower court refused to modify the judgment requiring demolition of the house. It is appropriate in light of today's ruling to recite the judge's comments at length:

"Nobody should live like Mrs. Freelander, even if they want to. And a nuisance is not the structure, it is human abuse that causes nuisances. Structures themselves are not abusive. It is only misuse of them that causes a structure to be a nuisance, and that surely is the case with Mrs. Freelander.

. . . . .

"... The house was filthy, the odor was pervasive, it was putrid, stinging my eyes, ... [N]o amount of masking can eradicate that smell.

"Mr. Amptman stated that yes, money could bring it up to code, money or effort could bring it up to code. Bring what up to code? Bring up to code the electrical? Sure, it can be brought up to code. The plumbing can be brought up to code. The structure might be improved, but it is still a nuisance, and the Court so finds.

. . . . .

"... The thing is, a nuisance might be abated by adding new plumbing, new wiring, but it does not abate and will not abate this nuisance.... So Mrs. Freelander will find a nice place to live, find people that can look after her. She can live comfortably in a civilized manner, she and her sister, but not in that house."

The lower court then ordered that the house be destroyed thirty days from the date of its ruling. Following the filing of the notice of appeal, the district court denied a request for a stay. We subsequently stayed the order to destroy the house pending resolution of this appeal.

■ As discussed above, our previous decision in this case was based on the evidence before the lower court at the time it ordered the destruction of the house. Freelander's failure to repair structural defects such as providing necessary support to the building and ensuring the existence

---

**3.** Mosely testified that most, if not all, of these changes were a result of community contributions and voluntary work by area residents. This fact is manifestly demonstrated by a partial list, which is included in the record, of persons and organizations that provided assistance, including 88 businesses and their employees, 9 other individuals, several civic organizations, and personnel from the Minot Air Force Base.

of working toilet facilities acted as a major factor in our affirmance of the judge's order to demolish the house. A house in danger of collapse is a hazard, not only to the occupants but also to the neighbors and any official personnel called in response to an emergency. By the same token, insanitary conditions which result in noxious smells that sufficiently annoy the comfort or endanger the health and safety of the neighbors can be properly prohibited, prevented, and corrected by the City. *City of Minot v. Freelander, supra.* But destruction of the property is a drastic remedy, and it must necessarily be a remedy of last resort "unless the property is of such nature that its use or possession cannot be other than for evil." *Pic v. City of Grafton,* 339 N.W.2d 763, 766 (N.D.1983). In *Pic* we quoted from the Minnesota case of *York v. Hargadine,* 142 Minn. 219, 223, 171 N.W. 773, 775 (1919), which held that where repairs or alterations can be made to eliminate the danger to surrounding property and to persons, "such repairs or alterations should be ordered rather than a tearing down of the building." We went on to state in *Pic* that a State's police power "cannot be extended by the authority which is entrusted with its exercise to an arbitrary misuse of private rights." *Pic* stands for the proposition that where less drastic means are available to correct or alleviate the problem, destruction of private property deemed a nuisance is an arbitrary act that is prohibited as a matter of law.

There is substantial uncontroverted evidence in this case that less drastic alternatives to destruction of the house are available.[4] A local architect stated that the building can be made structurally adequate by a few minor repairs. Both Freelander and Mosely testified as to the progress made since the trial court ordered destruc-

tion of the house. The City's own witness, who is in charge of enforcing the City's building and plumbing regulations, testified that the problems he found could be taken care of if individuals took it upon themselves to do the work and that it was not an impossible situation.

■■ Our review of an order denying a motion for relief from a judgment or order made pursuant to Rule 60(b), N.D.R.Civ.P., is limited to a determination of whether or not the trial court abused its discretion. See, e.g., *State Bank of Burleigh County Trust Co. v. Patten,* 357 N.W.2d 239 (N.D. 1984). Because this case involves the destruction of private property, in this case a home, the court must exercise extreme caution. In a situation that involves fundamental rights of privacy in one's own home, it is important to carefully circumscribe a State's broad police powers to actions that are absolutely necessary to the health and welfare of the other citizens of the community. And in those situations where some appropriate governmental action is necessary, the officials controlling such actions must be careful to not interpose their own views of proper decorum or correct cleanliness where there is neither a specific violation of a valid regulation nor a discernible danger to the community.

■ We are aware, as noted in *City of Minot v. Freelander, supra,* 368 N.W.2d at 518, that the bifurcated proceedings prior to the entry of the judgment "reflect the court's caution and restraint in enforcement of the drastic remedy of destroying a house," and that the "interest of the public, as well as the health and safety of Freelander and her sister, could hardly contemplate greater care than was demonstrated by the trial court in according opportunity for alteration and repair through the two

---

**4.** It is possible that Chapter 23–05, N.D.C.C., provides a less drastic alternative to destruction of the house that must be considered before destruction of the house can be ordered under the requirements of *Pic.* Chapter 23–05 authorizes local boards of health to require the abatement or removal of any nuisance, source of filth, or cause of sickness found on private prop-

erty when necessary for the protection of the public health. If the owner refuses or neglects to comply with the notice requiring correction of the problem, the board of health has the power to take appropriate action and assess the cost of such action against the property. Because this issue was not briefed or raised below, we do not consider it on this appeal.

continuances prior to ultimate disposition." The record on the motion for relief does not indicate any less care or concern by the trial court; rather, it may reflect the frustration of the trial court over the fact that despite the major improvements made to the house and in the sanitary conditions, the situation has again deteriorated. Although we recognize the trial court's frustration, we believe that in view of the significant structural improvements made to the house, which in turn assist in promoting better sanitary conditions, the trial court should attempt to fashion another alternative order whereby Freelander, before the house is ordered destroyed, is given another opportunity to better the sanitary conditions, cooperate with the various agencies which can assist her in that regard, and thus demonstrate that the house can be made habitable. To that end we reverse the order of the trial court insofar as it refused to modify the judgment by striking the portion that directs the destruction of Freelander's house and we remand this matter to the trial court for further proceedings and with direction to fashion an order consistent with this opinion.

ERICKSTAD, C.J., and LEVINE, MESCHKE and GIERKE, JJ., concur.