CITY OF MINOT, a municipal corporation and political subdivision of the State of North Dakota, Plaintiff and Appellee,

v.

Genevieve FREELANDER, a/k/a Genevieve Lee, Defendant and Appellant.

Civ. No. 870302.

Supreme Court of North Dakota.

June 28, 1988.

Nevin Van de Streek, of Eaton, Van de Streek & Ward, Minot, for plaintiff and appellee.

Thomas M. Disselhorst, Bismarck, for defendant and appellant.

VANDE WALLE, Justice.

Genevieve Freelander appealed from a judgment ordering the demolition of her home because it was determined to be a public and private nuisance. We affirm.

This is the third time that this case has been before this court. In *City of Minot v. Freelander*, 368 N.W.2d 514 (N.D.1985) [*Freelander I*], we affirmed the trial court's judgment that Freelander's house in Minot was a public and private nuisance because of "its filthy, unsanitary, and odorous condition" and ordering the house to be demolished. That judgment was based upon certain structural deficiencies in Freelander's house, its insanitary condition due to an accumulation of garbage, and the presence of noxious odors caused by an accumulation of cat excrement and urine throughout the house. Prior to the trial court's determination that the house be demolished in *Freelander I* it afforded Freelander an opportunity to cure the defects which caused her house to be a nuisance, but she showed no inclination to afford herself of the remedy. At the time of oral argument in *Freelander I* this court was informed of a community effort to clean and repair Freelander's house. However, we determined that this new evidence should be considered by the trial court after our decision in *Freelander I* because on appeal we must look solely to the evidence produced in the trial court.

Subsequent to our decision in *Freelander I*, Freelander moved the trial court for a modification of judgment pursuant to Rule 60(b), N.D.R.Civ.P., based upon the community effort to repair and clean her house. Freelander asked the trial court to strike that portion of the judgment ordering the destruction of her house, and to instead allow her to retain ownership. The trial court refused to modify the judgment. Freelander appealed from that order and we reversed the decision of the trial court in *City of Minot v. Freelander*, 380 N.W. 2d 321, 324–325 (N.D.1986) [*Freelander II*]. We stated that in light of the improvements made to the structure of the house Freelander should be given another opportunity to alleviate the remaining causes of the nuisance before demolition was used to abate the nuisance:

> "We are aware, as noted in [*Freelander I*], that the bifurcated proceedings prior to the entry of the judgment 'reflect the court's caution and restraint in enforcement of the drastic remedy of destroying a house,' and that the 'interest of the public, as well as the health and safety of Freelander and her sister, could hardly contemplate greater care than was demonstrated by the trial court in according opportunity for alteration and repair through the two continuances prior to ultimate disposition.' The record on the motion for relief does not indicate any less care or concern by the trial court; rather, it may reflect the frustration of the trial court over the fact that despite the major improvements made to the house and in the sanitary conditions, the situation has again deteriorated. Although we recognize the trial court's frustration, we believe that in view of the significant structural improvements made to the house, which in turn assist in promoting better sanitary conditions, the trial court should attempt to fashion another alternative order whereby Freelander, before the house is ordered destroyed, is given another opportunity to better the sanitary conditions, cooperate with the various agencies which can assist her in that regard, and thus demonstrate that the house can be made habitable. To that end we reverse the order of the trial court insofar as it refused to modify the judgment by striking the portion that directs the destruction of Freelander's house and we remand this matter to the trial court for further proceedings and with direction to fashion an order consistent with this opinion."

Subsequent to this court's decision in *Freelander II* the trial court entered a judgment following remand, on April 24, 1986. That judgment provided: (1) that Freelander's house was a public and private nuisance, (2) that Freelander was enjoined from "keeping, maintaining, harboring, or otherwise sheltering" any cats or animals similar to cats which produced noxious-smelling body wastes in her house, (3) that Freelander was enjoined to open her house to inspection by the City animal warden, who was authorized to remove any cats found on the premises, (4) that Freelander was enjoined to open her house to

inspection by the local health district officials, who were to report to the court, counsel, and Freelander "their observations, conclusions, and recommendations with regard to whether the premises are in a sanitary condition and, if not, what needs to be done in order to bring them into a sanitary condition," (5) that Freelander was enjoined to open her premises to an inspection by the City of Minot fire marshal, who was to report on compliance with the fire code and, if necessary, actions necessary to meet compliance, and (6) that the court would retain jurisdiction over the case.

On August 3, 1987, the City moved the trial court to issue a supplemental judgment providing for the demolition of Freelander's house. Accompanying this motion was an affidavit stating that Freelander continued to harbor cats on her premises, that she had not removed the cats' waste products from the house, and that the animal warden was unable to catch the cats due to the large number of hiding places created by the filthy conditions in Freelander's house. A hearing was set for August 20, 1987. The trial court continued the hearing until September 3, 1987, to afford Freelander an opportunity to retain new counsel when the attorney representing her withdrew from the case.

The hearing was held on September 3, 1987. At the hearing Freelander represented herself. The City offered evidence that (1) there were cats present in the Freelander house and that there were accumulations of cat feces and urine throughout the house which gave off a very strong odor, (2) there was trashlike debris strewn throughout the house, (3) one of the base-

ment walls of the Freelander house had collapsed following a summer rainstorm, and (4) there were numerous fire hazards within the Freelander house. The trial judge also personally inspected the Freelander house, and various photographs of the conditions in the house were admitted into evidence.

Subsequently the trial court issued a judgment. The trial court determined that Freelander's house "because of [its] filthy, unsanitary and odorous condition and because of structural decay constitutes a private nuisance and a public nuisance." It then ordered the demolition of Freelander's house. It is from that judgment that Freelander appealed.

■ Freelander argues that the trial court erred in determining that Freelander's house is a public and private nuisance. This argument must fail because Freelander's house was previously determined to be a private and public nuisance in *Freelander I*. In *Freelander II* we did not disturb that part of the judgment which determined Freelander's house to be a public and private nuisance.[1] Rather, we determined only that the trial court should modify the judgment so that, in light of the improvements made in the structural and sanitary condition of Freelander's house due to community efforts, Freelander could have another opportunity to rectify the problems which caused her house to be a nuisance rather than immediately utilizing demolition to abate that nuisance. As we stated:

"... we believe that in view of the significant structural improvements made to the house, which in turn assist in promot-

---

1. Contrary to the dissent's assertion that we mistake the record and misconceive the settled law on abating a nuisance, we have adhered to the record. The record and the law of the case were established in *Freelander I* and *Freelander II*. The dissent engages in sophistry when it observes that after remand in *Freelander II*, no judgment was entered directing Freelander to make repairs or to improve sanitary conditions. That statement ignores the fact we did not disturb that part of the judgment which determined Freelander's house to be a public and private nuisance, to wit: "we reverse the order of the trial court insofar as it refused to modify the judgment by striking the portion that directs

the destruction of Freelander's house ..." *City of Minot v. Freelander*, 380 N.W.2d 321, 325 (N.D.1986). It was the remedy which we directed the trial court to reconsider in *Freelander II*, not the issue of nuisance. It is incredible for the dissent to imply that Freelander, after four years of legal proceedings and hearings, was unaware that her house had been legally declared a nuisance and that she needed to make repairs and improve sanitary conditions to abate the nuisance. The record reflects numerous inspections which noted the deteriorating condition of the premises. From the evidence in the record before us, those conditions are not unlike those that existed in *Freelander I.*

ing better sanitary conditions, *the trial court should attempt to fashion another alternative order whereby Freelander, before the house is ordered destroyed, is given another opportunity to better the sanitary conditions, cooperate with the various agencies which can assist her in that regard, and thus demonstrate that the house can be made habitable.* To that end we reverse the order of the trial court insofar as it refused to modify the judgment by striking the portion that directs the destruction of Freelander's house and we remand this matter to the trial court for further proceedings and with direction to fashion an order consistent with this opinion." 380 N.W.2d at 325.

Although the trial court's judgment provided that Freelander's house was a private and public nuisance, that determination was unnecessary because the same determination had previously been made in *Freelander I* and thus was part of the law of the case. See *Tom Beuchler Const. v. City of Williston,* 413 N.W.2d 336 (N.D. 1987).

◼ We reluctantly conclude the trial court properly determined that it was necessary to demolish Freelander's house. In *Pic v. City of Grafton,* 339 N.W.2d 763 (N.D.1983), we held that the demolition of property in order to abate a nuisance is a remedy of last resort. That remedy is justified in this case because Freelander refuses to abide by the alternative remedy of caring for her property in a manner which would remedy the nuisance. A review of the record clearly indicates that Freelander did not avail herself of the additional opportunity to demonstrate that her house could be made habitable, which we afforded to her in *Freelander II.*

Freelander's unwillingness to correct the "filthy, unsanitary, and odorous conditions" of her house has been long-enduring. It was present before the trial court issued the judgment affirmed in *Freelander I,* when the court gave Freelander an opportunity to correct these problems; she refused to do so and the conditions actually deteriorated. Freelander's recalcitrance

continued even after cleaning and repairs were done in a community effort, when she allowed the sanitary conditions to again deteriorate. This recalcitrance continues, as is evidenced by Freelander's refusal to abide by the trial court's April 24, 1986, order that she not keep cats, and her refusal to follow recommendations by the local health department for improving the sanitary conditions in her house. Although the trial court has attempted to use less drastic means to alleviate the problem, Freelander's unwillingness to correct the problem indicates that destruction of the house is not an arbitrary act, but is necessary because " 'the property is of such nature [under Freelander's possession] that its use or possession cannot be other than for evil.' " *Freelander I,* 368 N.W.2d at 517, quoting *Pic v. City of Grafton, supra.*

In addition to the filthy insanitary, odorous, and structurally deficient conditions which previously existed, the trial court had evidence that one of the basement walls of the Freelander house had collapsed. This evidence, in addition to Freelander's recalcitrance toward correcting previously existing problems, certainly justified the trial court's order to demolish Freelander's house in order to abate the nuisance.

Freelander's present attorney argues there is evidence in the record below that money is now available from the estate of Freelander's sister, Hazel Carroll, to repair the house to bring it into compliance with the applicable building, health, safety, and fire codes. We are asked to reverse the judgment of the trial court on the supposition that Freelander will use the money to bring the house into compliance or, if she does not, that the trial court could order such repairs to be made and paid for from those funds. This argument was not made in the proceedings which resulted in the judgment from which this appeal is taken, and in that respect is reminiscent of the argument made to us in *Freelander I,* in which we were urged to consider improvements made to the house subsequent to the appeal. We noted that "Important policy considerations on finality of judgments require that new or additional evidence not

be considered on appeal." 368 N.W.2d at 518. However, a similar argument was made in a post-judgment proceeding wherein Freelander in an affidavit filed in support of a petition for a writ of mandamus ordering the City to allow the gas to be turned on in Freelander's house, did outline measures which she said she would take to improve the house. Were we to consider that affidavit as evidence on this appeal, which we do not under the principle established in *Freelander I*, we would nevertheless deem it insufficient. There is considerable evidence in the record to indicate that the insanitary condition of the house is not due to poverty but rather to cats which were forbidden by the trial court's judgment following remand in *Freelander II*. Moreover, there was no evidence, other than that the basement had been temporarily repaired because it was in danger of collapsing following a heavy downpour in August 1987, that any arrangements had been made to correct the condition of the house. After this many years of sparring with the City over the condition of the house and faced with a judgment requiring its destruction, Freelander must do more than make promises in an affidavit for this court or the trial court to conclude that any meaningful improvements in either the structure or cleanliness of the house would be realized.

■ Notwithstanding our direction to the trial court in *Freelander II*, it was not the trial court's obligation or function to order repairs to be made and paid for, that Freelander was unwilling to make and pay for. The property is Freelander's. As the owner it is for her to decide to correct the conditions which led to the judgment requiring the destruction of the house or to permit the house to be destroyed if she does not wish to correct those conditions.

■ Freelander also argues that the demolition of her house constitutes a taking of private property for public use for which she must be compensated under the dictates of the Fifth Amendment to the United States Constitution. However, it is well settled that the government's exercise of its police power to abate a public nuisance hazardous to the public health, safety, or welfare does not entitle the property owner to compensation. *Pic v. City of Grafton*, supra; *Mugler v. Kansas*, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1887); *Miller v. Schoene*, 276 U.S. 272, 48 S.Ct. 246, 72 L.Ed. 568 (1928); *City of Rapid City v. Boland*, 271 N.W.2d 60 (S.D.1978); *Busch v. City of Augusta*, 9 Kan.App.2d 119, 674 P.2d 1054 (1983); 7 McQuillan, *Municipal Corporations* § 24.561; 29A C.J.S. *Eminent Domain* § 6.

■ Freelander also argues that the trial court erred in proceeding with the hearing when she had not obtained an attorney. The hearing was originally set for August 20, 1987. Prior to that date Freelander's former counsel sought to withdraw from the case. On August 20, 1987, the trial court granted the motion to withdraw. It then continued the hearing until September 3, 1987, in order to allow Freelander time to employ new counsel. On that date Freelander appeared without counsel. She asserted that she had had trouble with her eye and had not had time to find new counsel. Questioning by the trial court revealed that Freelander had made no effort to obtain new counsel, even by phone. It also revealed that even though she claimed to have had an eye problem she had not been bedridden and had been able to go to the store. Freelander did not request an extension of time, and the trial court proceeded. These facts indicate that the trial court did not abuse its discretion in proceeding with the hearing.

The judgment of the trial court is affirmed.

ERICKSTAD, C.J., and GIERKE and LEVINE, JJ., concur.

MESCHKE, Justice, dissenting.

I respectfully dissent. The remedy applied is still not proportional to the problem.

For years, the City of Minot has tried to compel an obstinate, 73-year-old woman to clean her lifelong home and empty it of cats and garbage. We agreed with the City in *Freelander I* that, without opera-

tive plumbing facilities, the unsanitary, filthy, and odorous condition of her house made it a public health hazard and, thus, a nuisance. We considered that great care had been taken to accord opportunity for alteration and repair before ordering destruction. We left it to the trial court on remand to consider a late showing of post-judgment efforts by "a number of plumbers, electricians, carpenters and other people [who] ... donated their time, labor, and materials to repair her house and save it from destruction." 368 N.W.2d at 518.

The trial court refused, on remand, to consider anything except destruction of Freelander's home despite the extensive, volunteer community effort that brought about substantial repair and restoration of her home: "... placing columns in the basement, fixing the roof, installing new plumbing and wiring, and providing a new bathroom, a new porch, a new washer, and various items of furniture." 380 N.W.2d at 323. In *Freelander II*, we reversed that severe sanction, agreeing that the trial court should fashion a less drastic remedy than destruction, "in view of the significant structural improvements ... promoting better sanitary conditions, ..." 380 N.W. 2d at 325. Thus, we directed a change in remedy because of a change in conditions: substantial partial correction of the nuisance.

After the second remand, a newly assigned trial judge did not examine the extent of the improvements nor assess the scope of the nuisance remaining. There was no analysis of the extent of the repairs and restoration. Rather, when the City sought relief on remand, the trial court assumed the nuisance was the same and initially entered an interim order on March 11, 1986 requiring Freelander to cooperate with the local Health Unit in inspections and to correct sanitary violations specified by the Health Unit. Foreshadowing its "final solution," the trial court "specifically admonished" Freelander that it reserved "the right to reinstate the provisions" of the initial judgment "whereby the [City was] authorized to demolish the residence ... [if Freelander did] not meaningfully cooperate...."

Shortly thereafter, on April 24, 1986 the trial court entered a judgment on remand enjoining Freelander from keeping any cats (even her favorite one), authorizing the animal warden to inspect her home and remove "any cats," and requiring Freelander to cooperate in inspections. Inexplicably, Freelander was not required to do anything else to remedy conditions except get rid of her cats.

Over a year later, in August 1987, the City moved for a supplemental judgment to authorize the razing of Freelander's home and to bury her personal property in a landfill. The affidavit with the motion asserted that the animal warden and Health Unit were unable to keep the premises "free and clear of cats and the accumulated body waste of these cats" "without great risk to the health of [ ] personnel." The affidavit declared:

> "Mrs. Freelander has proven to be entirely intractable and recalcitrant during the entire course of this litigation with regard to changing her behavior.... Consequently the only adequate and appropriate relief ... is an order allowing the City of Minot to raze [her] house and to cart away and destroy the personal property therein to the extent [it] is contaminated with cat feces or cat urine or both."

After the motion and before the initially scheduled time for hearing, the collapse of much of one of the basement walls from flooding rainwater, along with court-approved withdrawal of her counsel, compounded Freelander's adversities.

At the rescheduled hearing in early September 1987 on the motion for a supplementary judgment, the trial court brushed aside Freelander's plea that her health had not permitted her time to obtain new counsel in the two weeks since withdrawal of her initial counsel had been allowed. The trial court also ignored her plea that she was destitute, apparently because she had an expectancy of inheritance from her recently deceased sister's estate. Unguided by any truly adversarial presentation, the trial court again did not undertake either to measure the extent of improvements or to assess the extent of the nuisance remaining after those earlier improvements.

Freelander's sister was gone, so filth in the home now apparently affected Freelander alone. No evidence was offered about the reach of continuing odors in the neighborhood, after the extensive effort to repair and renovate her home. No evidence was offered that the recently collapsed basement wall was irreparable. The trial court did not deliberate on alternatives to destruction. Only the "bulldozer" remedy, demolition of Freelander's lifelong home, was invoked.

Long ago, in considering another kind of "unclean" house as a nuisance, this court declared:

"There is no higher property right known to the law than the right of the individual to the possession of his home, and the deprivation of this right, even temporarily, is not to be sanctioned unless ample legal cause be first shown to exist." *State ex rel. Herigstad v. McCray* [48 N.D. 625], 186 N.W. 280, 282 (1921).

Today's decision recites that "it was not the trial court's obligation or function to order repairs to be made and paid for, that Freelander was unwilling to make and pay for." This conclusion mistakes the record and misconceives settled law on abating a nuisance. Because the conditions of the nuisance had changed, the trial court was in no position to fashion a remedy without measuring what was left to be done.

After remand in *Freelander II*, no judgment was entered directing Freelander to make repairs or to improve sanitary conditions. She was only ordered to get rid of her cats and to cooperate in inspections. When she did not completely rid her home of cats, the trial court opted only for "bulldozing" it. The trial court did not specifically order repairs or cleanup, nor did it set deadlines for doing so. Other traditional remedies of contempt, damages, or receivership were not apparently considered, either.

On this appeal, the City acknowledges that "it always has been the sanitation and odor problem involving the cats which has been the predominant concern of the city." Asserting that "poverty and squalor are not invariably yokemates," the City argues that "stench and filth ... by themselves alone justify the judgment appealed from, ..."

But, the City has misinterpreted the law of abating a nuisance. The remedy for a nuisance should not be punitive but should be shaped to correspond to the nature and extent of the nuisance. 58 Am.Jur.2d *Nuisances* § 142 and § 162; 42 Am.Jur.2d *Injunctions* § 56 and § 6. *See also* Annot., *Modern Status of Rules as to Balance of Convenience or Social Utility as Affecting Relief from Nuisance*, 40 A.L.R.3d 601. Correcting a nuisance, not burying it, is the foremost remedial object. If stench alone compels demolition, without remedial latitude, many municipal sewage lagoons would have to be shut down in some seasons, if not destroyed. A proper remedy is surely as important for a lonely old lady as any municipality. The trial court should have granted relief commensurate with the scope of the remaining problem.

I would remand with directions to the trial court to carefully determine the extent of the improvements and assess the remaining scope of the nuisance. The trial court should specify necessary steps for abatement and correction of remaining problems and fix a reasonable time for compliance. Only after determining the remaining scope of the problems and giving Freelander express opportunity to remedy them can a trial court fairly conclude that there is no practicable alternative to demolition of a home, no matter how shabby.

It may be, yet, that the collapsing condition of the house will be determined irreparable and, if continuing filthy and unsanitary conditions threaten the health and welfare of others than Freelander, its destruction as not habitable would be warranted. If so, the choice should then be clearly given to Freelander: either fix it by a date certain, or suffer its destruction. If that was what was intended here on remand, it is not what was done.

Therefore, I respectfully dissent.