Sophie STARZENSKI, Kazmer Starzenski, and Gennie Starzenski, Appellants–Plaintiffs,

v.

CITY OF ELKHART, Richard L. Moore, Street Commissioner, Raymond H. Minegar, Code Enforcement Officer and President, Leroy Berry, Jr., City of Elkhart Hearing Officer, and Health and Sanitation Commission, Appellees–Defendants.

No. 20A05–9502–CV–56.

Court of Appeals of Indiana.

Jan. 10, 1996.

William J. Cohen, Elkhart, for Appellants.

Paul D. Eash, Elkhart City Attorney, Elkhart, for Appellees.

## OPINION

BARTEAU, Judge.

Sophie Starzenski, Kazmer Starzenski and Gennie Starzenski appeal from the trial court's order denying the Starzenskis's request for a preliminary injunction against the City of Elkhart (hereinafter, "the City"), which removed trash and debris from the Starzenskis's property. We heard oral argu-

ment on November 27, 1995, at the Valparaiso University School of Law.

## ISSUES

We consolidate and restate the issues raised on appeal as:

(1) Whether the Starzenskis may attack an order issued under Ind.Code 36–7–9–5 and affirmed under I.C. 36–7–9–7 in a collateral proceeding.

(2) Whether the City's action in entering the Starzenskis's property and removing trash and debris violated the Starzenskis's Due Process rights under the Fourth and Fourteenth Amendments to the United States Constitution.

(3) Whether the City's action in entering the Starzenskis's property and removing trash and debris violated the Starzenskis's rights under the Fifth and Fourteenth Amendments to the United States Constitution.

(4) Whether the order under which the City entered the Starzenskis's property and removed trash and debris was unenforceable because it was "too stale."

## FACTS

Sophie, Kazmer and Gennie Starzenski own real estate located at 1015 West Garfield in Elkhart, Indiana. Sophie describes herself in her Brief as a "bag lady" who resides in Elkhart.[1] Kazmer and Gennie do not live in Elkhart.[2]

In 1991, the Building Commissioner and Enforcement Authority (hereinafter, "Enforcement Authority")[3] of the City of Elkhart determined that the Starzenskis's property was in violation of I.C. 36–7–9, et seq.,

1. There is a house on the property at 1015 West Garfield, although the City and the Starzenskis dispute how the property is used. Sophie claims that she lives in the house at that location as her primary residence. The City, however, disputes this contention and points to the fact that there has been no water or gas service to the house for many years. For the purpose of this decision, we presume that the house is Sophie's home.

2. Throughout the proceedings before the Building Commissioner and Enforcement Authority of the City of Elkhart, Sophie and the City could only identify the last known address of Kazmer

as being in Antarctica, and the address of Gennie as being in New York. It was not until this matter was brought before the Elkhart Superior Court that Kazmer and Gennie informed the City that their current address is in Sequim, Washington.

3. Indiana Code 36–7–9–2 defines "enforcement authority" as the chief administrative officer of the department authorized by ordinance to administer I.C. 36–7–9, et seq., which governs the enforcement of building standards.

and City of Elkhart Ordinance No. 3897, due to a large accumulation of trash and debris on the premises. The Enforcement Authority ordered that the property be cleaned,[4] and a hearing on the matter was set for July 24, 1991.[5] In accordance with I.C. 36–7–9–25, notice of the hearing was sent to, and received by, Sophie at the 1015 West Garfield address. Notices also were sent to Kazmer and Gennie at their Antarctica and New York addresses, but the notices were returned undelivered. Notice was also published in the local newspaper, *The Elkhart Truth*. Sophie appeared at the hearing.

At the July 24, 1991 hearing, the City offered photographs and testimony concerning the condition of the property. At the conclusion of the hearing, the Hearing Authority [6] determined that the property was in substantial violation of the building code, was unsafe, unclean and constituted a nuisance. Supp.R. 665–67. The Hearing Authority affirmed the Enforcement Authority's order, and sent a written "order" to Sophie instructing the Starzenskis to remove "junk and debris" from the property within 30 days, after which time the City was authorized to enter the property and take the required action.

The 30–day time period came and went without the Starzenskis taking any substantial action to ameliorate the problem. By September, 1992, the Starzenskis had not complied with the order, and in fact additional debris had collected on the property. At that time, the exterior of the property was filled with trash, debris and flammable materials. As visible through windows and doors, the house was "jam packed" with debris and garbage.

The Enforcement Authority again determined that the house and premises were unsafe, and on September 23, 1992 executed a "Notice—Order to Take Action." Supp.R. 783–84. The Order to Take Action was sent to Sophie, who signed a return receipt upon receiving it. Notices of the Order to Take Action were also sent to Kazmer and Gennie, but were returned undelivered. The City also published the Order to Take Action in the local newspaper. The Order to Take Action required the removal of trash from the entire premises within 10 days, and stated:

> If you do not comply with this order, the City of Elkhart, through its Building Department, may enter the premises and carry out the action required by the order and charge you for the costs of said clean up.

Supp.R. 784. Notice of a hearing was sent to, and received by, Sophie. Again, notices were sent to Kazmer and Gennie but were returned undelivered. The second hearing was held on October 29, 1992.

Sophie appeared at the second hearing, offered evidence, cross-examined witnesses and presented argument. Inspectors testified and offered photographs of the property, describing the premises, inside and out, as containing a large amount of debris and trash.[7] Also offered into evidence was a September 24, 1992, police report, completed when Sophie reported that the house had been burglarized, in which the investigating officer stated that there was no way to enter the house due to piles of materials stacked to the ceiling. The police officer reported that "[t]he residence was jammed full, [including] the basement of everything imaginable...." Supp.R. at 705–06.[8]

---

4. Indiana Code 36–7–9–5(a)(4) authorizes the Enforcement Authority to issue an order requiring "removal of trash, debris, or fire hazardous material in and about the unsafe premises."

5. Indiana Code 36–7–9–7, with unrelated exceptions, requires a hearing be held relative to each order of the Enforcement Authority.

6. Indiana Code 36–7–9–2 defines "hearing authority" as a person or persons designated as such by the executive of a city or county, or by the legislative body of a town.

7. There is no evidence that inspectors actually entered the residence on the property. The Record shows that the inspectors determined that the house on the property was packed with debris from seeing trash piled up in the windows.

8. The police officer did not enter the residence, as the door was blocked by debris. The police report reflects that Sophie had to enter the house by crawling through a window to see if anything had been stolen.

The Hearing Authority again found that the residence was a nuisance, and again affirmed the order of the Enforcement Authority that "substantial stuff and things"[9] be removed from the premises. Supp.R. 721–24. The Hearing Authority specifically instructed Sophie to bring the property into compliance within 15 days, after which the City was authorized to enter the property, inside and out, and take the necessary action. Supp.R. 722–24. The Hearing Authority also expressly notified Sophie of her right to appeal to the Circuit or Superior Court, and told her that she must appeal his decision within 10 days. Supp.R. 703, 724. Sophie did not appeal.

Again, the Starzenskis did not comply with the order within the time allotted. The City sent notice of its intent to enter and clean the property to Sophie at the 1015 Garfield address on February 4, 1993. Sophie received this notice on February 5. The City entered the property on February 8, 1993, to remove debris and clean. The City found the yard, house, shed and garage packed with trash. The house was filled with debris, in some places five feet deep, which completely covered the floor. The basement also was packed with trash, at some points as high as the ceiling.

The City's workers separated and removed the trash, while items that appeared to be of value were retained in areas of the house that the workers had cleared away. These items remained in Sophie's possession. The debris removed from the residence filled eight dump trucks and was taken to a landfill.

While the City's workers cleared the debris, the Starzenskis's attorney petitioned for, and was awarded, a temporary restraining order that stopped the trash removal. The temporary restraining order was presented to the City's workers and prevented the workers from clearing the refuse from the Starzenskis's basement. In later seeking a preliminary injunction, the Starzenskis argued that the City violated their Due Process rights by entering their property without a warrant, and that the City had taken their possessions without just compensation. After a hearing, the trial court denied their request for a preliminary injunction, finding that the City's actions did not violate the Constitution.

### COLLATERAL ATTACK

Indiana Code 36–7–9–8 states, in part:

(a) An action taken under section 7(d) of this chapter is subject to review by the circuit or superior court of the county in which the unsafe premises are located, on request of:

> (1) any person who has a substantial property interest in the unsafe premises; or

> (2) any person to whom that order was issued.

(b) A person requesting judicial review under this section must file a verified complaint including the findings of fact and the action taken by the hearing authority. The complaint must be filed within ten (10) days after the date when the action was taken.

(c) An appeal under this section is an action de novo . . . .

The Starzenskis did not file an appeal under I.C. 36–7–9–8, despite the fact that the Hearing Authority specifically advised Sophie of her right to do so.

■ The law is clear in Indiana that, where a statute sets forth a specific time period for filing an appeal from an administrative decision, one must timely file the appeal in order to invoke the jurisdiction of the court. *See Claywell v. Review Bd. of the Ind. Dep't of Employment & Training Serv.* (1994), Ind., 643 N.E.2d 330; *Charles A. Beard Classroom Teachers Assoc. v. Bd. of School Trustees* (1995), Ind.App., 646 N.E.2d 988. Here, the Starzenskis filed no appeal from the order of the Hearing Authority. Instead, they seek to circumvent the statutory requirements governing appeals from the Hearing Authority by seeking an injunction

---

**9.** Evidently, the Hearing Authority chose to refer to the debris within and about the house as "substantial stuff and things" because Sophie objected to the characterization of the material in her house as being trash. Supp.R. 709–710.

against the City in a collateral proceeding brought in the Elkhart Superior Court.

■ The Starzenskis argue that the time for filing an appeal under I.C. 36–7–9–8 did not commence because they were never served with written notice of the Hearing Authority's action under I.C. 36–7–9–25(a). However, we find that I.C. 36–7–9–25 applies only to notice of orders issued by an enforcement authority, and does not apply to decisions of a hearing authority.

The statute establishing the procedure through which the enforcement authority issues orders specifically requires notice under I.C. 36–7–9–25. I.C. 36–7–9–5(a), (b). The Starzenskis do not dispute the fact that the enforcement authority provided notice as required by that statute. Instead, the Starzenskis argue that, while the Hearing Authority orally notified Sophie of the contents of his action affirming the order of the Enforcement Authority at the conclusion of the October, 1992 hearing, the Hearing Authority did not provide her with written notice of his decision. The Starzenskis contend that the 10–day appeal period established in I.C. 36–7–9–8 does not commence until they are served with written notice of the Hearing Authority's action. Since they were not given written notice of the October, 1992 action, the Starzenskis conclude that the 10–day appeal period never commenced.

■ We disagree. Indiana Code 36–7–9–7 governs notice of actions of a hearing authority, and does not require written notice of a hearing authority's action be provided to the parties. To the contrary, I.C. 36–7–9–7(g) specifically states:

> The record of the findings made and action taken by the hearing authority at the hearing shall be available to the public upon request. *However, neither the enforcement authority nor the hearing authority is required to give any person notice of the findings and action.*

(Emphasis added). Indiana Code 36–7–9 does not require the hearing authority to serve written notice of its decision on the parties. The Hearing Authority informed Sophie of his findings and action at the conclusion of the hearing, and specifically informed her of the 10–day appeal procedure. This satisfies the statutory requirements, and triggered the 10–day appeal period.

■ An appeal from the Hearing Authority's decision "must be filed within ten (10) days after the date when the action was taken." I.C. 36–7–9–8(b). Indiana Code 36–7–9–7(d) states:

> At the conclusion of any hearing at which a continuance is not granted, the hearing authority may make findings and *take action to:*
>
> *(1) affirm the order;*
>
> *(2) rescind the order; or*
>
> *(3) modify the order . . .*

(Emphasis added). Thus, the Hearing Authority took action on the Starzenskis's case at the conclusion of the October 29, 1992 hearing when it affirmed the Enforcement Authority's order. The Starzenskis failed to appeal from that action within the requisite time period. The Starzenskis have waived their challenge to the Hearing Authority's decision and the Enforcement Authority's order, and the opportunity to have the court conduct a *de novo* review of the evidence under I.C. 36–7–9–8.[10]

■ Nevertheless, even assuming that the Starzenskis may prosecute their collateral attack, considering the merits of their claim we find that the trial court did not err in denying their request for a preliminary injunction. The grant or denial of a preliminary injunction rests within the sound discretion of the trial court. Appellate review is limited to a determination of whether the trial court clearly abused that discretion. *Fumo v. Medical Group of Michigan City* (1992), Ind.App., 590 N.E.2d 1103, *reh'g denied, trans. denied; Steenhoven v. College Life Ins. Co. of America* (1984), Ind.App., 458 N.E.2d 661, *reh'g denied.*

---

10. We also note that, even if the 10–day period established in I.C. 36–7–9–8 had not run when they filed for a preliminary injunction, the Starzenskis could still not challenge the order in a collateral proceeding. Their avenue of recourse would be to file a verified complaint in the Circuit or Superior Court in accordance with I.C. 36–7–9–8(b).

## DUE PROCESS

██ The familiar language of the Fourth Amendment to the United States Constitution establishes the right of persons to be secure in their persons, houses, papers and effects, and guards against unreasonable searches and seizures. Absent consent or exigent circumstances, a private home may not be entered to conduct a search or effect a seizure without a warrant. *See Steagald v. United States* (1981), 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38; *Payton v. New York* (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639. The Supreme Court has extended this protection against unreasonable seizures of property in the civil context. *See Soldal v. Cook County, Ill.* (1992), 506 U.S. 56, 113 S.Ct. 538, 121 L.Ed.2d 450. To this end, the Starzenskis argue that the City was required under the Fourth Amendment to obtain a warrant issued by the court in order to enter their property and remove, or "seize," debris. We do not agree.

 The purpose of the warrant requirement is to install due process safeguards into the procedure through which the government searches or seizes a person's property by requiring that an objective party weigh the interests of the government and the individual in order to determine that the entry is reasonable. *Marshall v. Barlow's, Inc.* (1978), 436 U.S. 307, 315–16, 98 S.Ct. 1816, 1822, 56 L.Ed.2d 305. In this case, the Hearing Authority considered the evidence presented by the City and the Starzenskis at a hearing and determined that the City's intrusion into the Starzenskis's property was reasonable and necessary.

The Starzenskis point to the decision of *Camara v. Municipal Court* (1967), 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930, in which the Supreme Court found that a city could not conduct a warrantless inspection of a residence for compliance with its housing code. However, in the *Marshall* decision, the Supreme Court recognized that a similar inspection could be conducted upon obtaining a "warrant *or its equivalent.*" 436 U.S. at

325, 98 S.Ct. at 1827 (emphasis added). As the Supreme Court reasoned in *Camara:*

> The warrant procedure is designed to guarantee that a decision to search private property is justified by a reasonable government interest. But reasonableness is still the ultimate standard. If a valid public interest justifies the intrusion contemplated, then there is probable cause to issue a suitably restricted search warrant.

387 U.S. at 539, 87 S.Ct. at 1736.

The Starzenskis are not challenging a warrantless, pre-hearing inspection of their property. The Record shows that all of the evidence that the City collected regarding the violation was gathered by observing the property as it appeared in plain view from the street. The contents and condition of the interior of the house on the property was determined from viewing debris piled up in windows, and from the report of a police officer who was summoned to the house by Sophie. Thus, rather than challenging an evidence-gathering intrusion on their property, the Starzenskis contend that the City violated their Fourth Amendment rights by entering their property under an order affirmed by the Hearing Authority after an evidentiary hearing.[11]

██ The United States Supreme Court discussed the requirements of due process in *Mathews v. Eldridge* (1976), 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18. Therein the Court recognized that the requirements of due process may differ in various situations, and set forth a balancing test to determine what is required under the circumstances.

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative

11. Indiana Code 36–7–9–16 permits an *investigatory* inspection of a building under the authority of a warrant issued by the court.

burdens that the additional or substitute procedural safeguard would entail.

424 U.S. at 335, 96 S.Ct. at 903. We recognize that the Starzenskis's interest in keeping their property free from government intrusion and seizure is highly significant, as well as the fact that the City has an important interest in protecting the health and property of its citizens from nuisances created by those within the City. However, the procedure set forth in the Indiana Code, to which the City adhered in proceeding against the Starzenskis, afforded the Starzenskis considerable due process protection.

The procedure through which it was determined that the City's contemplated intrusion onto the Starzenskis's property was reasonable afforded the Starzenskis the opportunity to challenge the City's evidence and present their own evidence and arguments in rebuttal. The City provided the Starzenskis notice of the alleged violation and of the hearings it held on the matter. Further, while I.C. 36–7–9–7 only requires that the City hold one hearing on the Enforcement Authority's order, the City of Elkhart held two hearings in this matter.[12]

Upon considering the evidence, the Hearing Authority twice agreed with the Enforcement Authority that the property was in violation of the Indiana Code and City of Elkhart ordinance, and affirmed the order requiring the Starzenskis to clean up the property. The order also authorized the City to enter the property and remove the debris should the Starzenskis fail to comply, and the Starzenskis were notified of this fact. The City entered the Starzenskis property only after the Hearing Authority held a full hearing, considered the evidence and determined that the City's contemplated intrusion onto the property was justified by the reasonable government interest in protecting the health and safety of the community.

Further, we fail to see how the additional due process safeguard proposed by the Starzenskis—that the order permitting the removal of the debris be approved by the court rather than the hearing authority—would af-

ford them any additional protection. Under the procedure set forth in the statute, the Starzenskis could have appealed the Hearing Authority's finding to the Elkhart County Circuit or Superior Court, which could then review the matter *de novo.* The court could have reviewed the evidence and determined whether the contemplated intrusion was reasonable. I.C. 36–7–9–8. However, the Starzenskis did not seek the review of the court under the statute. That the Starzenskis now claim that only a judge, and not the Enforcement Authority or the Hearing Authority, has the constitutional power to authorize the City to enter their property and remove the debris therefrom is to no avail. The Starzenskis had the opportunity to bring this matter before the court and opted not to do so.

 Likewise, the Starzenskis cannot prevail on their claim that the evidence does not support the Hearing Authority's finding that their property was in violation of the law. Consideration of such an argument would require the examination and weighing of evidence. The law is clear that the court may only conduct *de novo* review when the Hearing Authority's decision is appealed under I.C. 36–7–9–8. *See* I.C. 36–7–9–8(c). The Starzenskis did not raise this contention on direct appeal, and we will not consider it now under a collateral attack.

The City's entry into the Starzenskis's property and removal of debris therefrom was done pursuant to an order affirmed after a full adjudicatory hearing. The City's actions did not violate the Starzenskis's Due Process rights.

### JUST COMPENSATION

The Starzenskis also argue that the City seized their property without compensating them, in violation of the Fifth and Fourteenth Amendments. Again, we do not agree.

 The North Dakota Supreme Court addressed this issue under very similar facts in *City of Minot v. Freelander* (1988), N.D., 426 N.W.2d 556. Therein, the government

12. Under I.C. 36–7–9–5(d), the Enforcement Authority's order expires two years after notice of the order is given. Thus, at the time the second

notice of violation was given on September 28, 1992, the order that was issued and affirmed in 1991 was still enforceable.

demolished a person's house because it was a nuisance, due to:

[A]n accumulation of garbage, and the presence of noxious odors caused by an accumulation of cat excrement and urine throughout the house.

*Id.* at 557. Rejecting the claimant's argument that the State had taken his house without just compensation required under the Fifth Amendment, the North Dakota Supreme Court reasoned:

[I]t is well settled that the government's exercise of its police power to abate a public nuisance hazardous to the public health, safety, or welfare does not entitle the property owner to compensation.

*Id.* at 560 (citing *Mugler v. Kansas* (1887), 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205; *Miller v. Schoene* (1928), 276 U.S. 272, 48 S.Ct. 246, 72 L.Ed. 568).

 In a recent case, the United States Supreme Court narrowed the scope of State regulation of land use by holding that a taking within the meaning of the Fifth Amendment may occur when the government acts to abate a condition on property that would not be actionable as a nuisance under the common law.

Any limitation so severe cannot be newly legislated or decreed (without compensation), but must inhere in the title itself, in the restrictions that background principles of the State's law of property and nuisance already place upon land ownership. A law or decree with such an effect must, in other words, do no more than duplicate the result that could have been achieved in the courts—by adjacent land owners (or other uniquely affected persons) under the State's law of private nuisance, or by the State under its complementary power to abate nuisances that affect the public generally, or otherwise.

*Lucas v. South Carolina Coastal Council* (1992), 505 U.S. 1003, 1029, 112 S.Ct. 2886, 2900, 120 L.Ed.2d 798. It is well-settled in Indiana that cities and towns have the authority to regulate the use of property to protect the health and safety of their residents. As we held in *City of Gary v. Ruberto* (1976), 171 Ind.App. 1, 354 N.E.2d 786, 790: "Attempts by the Building Department

to enforce building and safety codes do not amount to a taking:

Cities and towns have power to establish reasonable regulations for the protection of lives, health and property of their citizens, and to enforce compliance with such regulations by fixing penalties to be imposed upon violators of the regulations. This necessarily implies the power to require the citizen to use his property as not to defeat such regulations and render them ineffective. Reasonable regulations are not unconstitutional merely because they affect the uses to which private property may be put. This is not a taking of private property. It is an exercise of the police power."

*Id.* 354 N.E.2d at 789 (citing *Combs v. City of New Albany* (1966), 139 Ind.App. 641, 218 N.E.2d 349; *Spitler v. Town of Munster* (1938), 214 Ind. 75, 14 N.E.2d 579). The City entered the Starzenskis's property and removed trash and debris to abate a nuisance under its police power. Such does not constitute a taking and the Starzenskis are not entitled to compensation for the removed materials.

 The Starzenskis also contend that the City acted unreasonably in the manner in which it removed the debris from their property. They claim that, while in the process of removing the debris from their property, the City also threw out items that had real or sentimental value. They argue that "[m]any of Sophie's personal effects were destroyed without ever giving her an opportunity to save them." Brief of Appellant at 35.

The Record does not support this assertion. The City of Elkhart dealt with the unsanitary and hazardous condition of the Starzenskis's property since 1985. The City repeatedly asked that the Starzenskis clean the property, and in prior years had entered the property under its police power and removed debris from Sophie's yard. There is no evidence in the Record that the Starzenskis ever acted to substantially remedy the situation themselves.

Further, Sophie was told numerous times by the City to remove the trash and debris from her property, inside and out, or the City

would enter and do it for her. The first of these specific notices was given to her in 1991. Nearly two years later and faced with no other recourse, the City finally made good on its threats to enter the Starzenskis's property and remove the hazard. Even then, however, the City provided Sophie with three-days notice before it entered her property. Now, after ignoring all of the City's notices and warnings and neglecting to act for the benefit of themselves and their community, the Starzenskis complain that the City acted unreasonably by taking items that the Starzenskis wished to keep. However, we must balance the Starzenskis's interest in retaining these certain items against the City's interest in abating the nuisance the Starzenskis created.

> As is true in other circumstances, the reasonableness determination will reflect a "careful balancing of governmental and private interests...." Assuming for example that the officers were *acting pursuant to a court order, and as often would be the case, a showing of unreasonableness on these facts would be a laborious task indeed.*

*Soldal,* 506 U.S. at 71, 113 S.Ct. at 549 (citations omitted) (emphasis added).

The Starzenskis could have prevented the City from removing the selected items that they wished to retain by not allowing the property to decay into such a hazardous condition, cleaning up the property themselves, or at a minimum sorting through the debris themselves and separating the items they wanted to retain. The Starzenskis left the City with no option but to abate the nuisance through the exercise of its constitutional police power. The City acted completely within the confines of an order of which the Starzenskis had notice and an adequate opportunity to comply. In the light of these circumstances, we cannot say that the trial court erroneously determined that the City did not act unreasonably.[13]

■ Without citing to the Record, the Starzenskis claim that there is testimony and

evidence that the City's workers threw valuables and money out with the rubbish, and may have kept some of Sophie's property themselves. Also without citing the Record or authority, they claim that the City failed to properly train the workers who conducted the clean up. Under our standard of review, we cannot reconsider or reweigh evidence and substitute our judgment for that of the trial court. City workers testified that they sorted through the debris in the house and separated out money and items that appeared to be of value. An inventory reflects the property the City did not discard. R. 676–77. The trial court did not abuse its discretion in denying the Starzenskis's petition for a preliminary injunction.

### *DELAY IN EXECUTION*

The Starzenskis also argue that the City could not enforce the Enforcement Authority's order because it was "too stale." In support of this, the Starzenskis cite I.C. 35–33–5–7(b), which generally states that a search warrant issued by a court must be executed not more than 10 days after the date of issuance. However, I.C. 35–33–5–7 is not controlling in this matter.

■ As noted above, the City was not executing a search warrant, but rather was executing an order to abate a nuisance issued by the Enforcement Authority and affirmed by the Hearing Authority. Indiana Code 36–7–9–5 governs the expiration of orders issued by an enforcement authority and states:

> The order expires two (2) years from the day the notice of the order is given, unless one (1) or more of the following events occurs within that two (2) year period:
>
> (1) A complaint requesting judicial review is filed under section 9 of this chapter.
>
> (2) A contract for action required by the order is let at public bid under section 11 of this chapter.
>
> (3) A civil action is filed under section 17 of this chapter.

13. We note, however, that in its denial of the Starzenskis's request for a preliminary injunction, the trial court provided the Starzenskis with a measure of relief by granting them an additional 60 days to remove items they wish to retain from the property before the City could complete the clean up of the property.

The Enforcement Authority provided notice of its order to the Starzenskis on September 28, 1992.[14] The City executed its action in this matter on February 8, 1993, well within the two-year period. The order was not "stale" and was enforceable.

AFFIRMED.

SHARPNACK, C.J., concurs.

RUCKER, J., concurs in result.

---

14. Sophie signed a certified receipt for the Order to Take Action on that date.