**MODUFORM, INC., Appellant–Plaintiff,**

v.

**HARRY H. VERKLER CONTRACTOR, INC., and American Casualty Company of Reading, Pa., Appellees–Defendants.**

No. 34A02–9602–CV–98.

Court of Appeals of Indiana.

June 13, 1997.

---

Fred E. Schlegel, Charles A. Grandy, Baker & Daniels, Indianapolis, John R. Burns, III, Baker & Daniels, Fort Wayne, for Appellant–Plaintiff.

Michael L. Einterz, Indianapolis, for Appellee Harry H. Verkler Contractor, Inc.

Terrence L. Brookie, Locke, Reynolds, Boyd & Weisell, Indianapolis, for Appellee American Casualty Company of Reading, Pa.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

ModuForm, Inc. ("ModuForm") appeals from the trial court's denial of its motion for

summary judgment and grant of summary judgment in favor of both Harry H. Verkler Contractor, Inc. ("Verkler") and American Casualty Company of Reading, Pa. ("American Casualty"). Verkler was hired by the Howard County Jail and Juvenile Detention Building Corporation ("Project Owner") to serve as the general contractor for construction of the Howard County Jail and Juvenile Detention Center (the "Project"). Pursuant to Indiana Code § 36–1–12–13.1, Verkler obtained a payment bond from American Casualty, the surety. ModuForm, a furniture manufacturer, had filed a complaint against the bond seeking $145,936.36 in payment for furniture it had supplied to First Office Furnitures, another subcontractor, for completion of the Project. The court granted Verkler and American Casualty's motion for summary judgment on the basis that ModuForm had failed to pursue its claim within 60 days of the final completion and acceptance of the Project as required by Indiana Code § 36–1–12–13.1(e).

We reverse and remand.

### ISSUE

The sole issue presented for our review is whether the trial court erred when it granted summary judgment in favor of Verkler and American Casualty.[1]

### FACTS

The facts most favorable to ModuForm show that in 1992, Verkler entered into an agreement with the Project Owner to serve as a general contractor for construction of the Project. Verkler was responsible for providing the furniture under the contract and subcontracted with First Office Furnishings for that purpose. First Office Furnishings, in turn, entered into an agreement with ModuForm to provide the furniture and materials. First Office Furnishings later substituted Jasper Seating for ModuForm as the supplier of 44 "Item 26" chairs.

ModuForm completed delivery of its furniture to the Project on May 21, 1993. Jasper Seating made its final shipment of furniture

1. We heard oral argument on April 22, 1997.

to the Project on October 15, 1993. Prior to delivery of the furniture, on May 10, 1993, the Project Owner President, Joseph Davis, the Project Owner Secretary, John Schultz, the architect, Joseph Mrak, and the President of the Board of Commissioners of Howard County, James Shearer, signed an affidavit which declared the Project "complete and ready for occupancy."

In July of 1993, Verkler paid First Office Furnishings for the materials it had supplied to the Project, including the $145,936.63 for the furniture supplied by ModuForm. First Office Furnishings then declared bankruptcy, ModuForm was not paid, and the Project retained all of the furniture. On August 13, 1993, ModuForm notified the Project Owner and Verkler that it had not been paid. Seven days later, ModuForm notified Verkler's counsel and American Casualty that it had not been paid for the materials it supplied to the Project. None of the parties responded to these notices.

Then, on October 13, 1993, ModuForm submitted to the Project Owner signed duplicate statements of its Notice of Default and Statement of Amount Due. American Casualty's and Verkler's counsel requested additional information on the amount owed. On November 18, 1993, ModuForm filed suit against Verkler and American Casualty. Cross-motions for summary judgment were filed, and the trial court granted summary judgment in favor of Verkler and American Casualty. The court's order states in part:

3. ModuForm, so as to be able to pursue a valid claim under I.C. 36–1–12, and to avoid waiving its claim and being estopped from pursuing it, had to pursue its court action against American Casualty as the surety and Verkler within sixty (60) days of the date of final completion and acceptance of the Howard County Jail and Juvenile Detention Center Building Corporation, pursuant to I.C. 36–1–12–13.1(e).

4. For the purpose of I.C. 36–1–12–13.1, the date of final completion and acceptance of the Howard County Jail and Juvenile Detention Center Building Corporation was May 10, 1993.

5. ModuForm failed to initiate its court action within sixty (60) days of May 10, 1993, as required by I.C. 36–1–12–13.1(e), and consequently, ModuForm has waived its right to pursue its bond claim in this matter, and is estopped, by operation of law from pursuing its claim on the bond against American Casualty and Verkler.

\* \* \* \* \* \*

7. The Court, being duly advised in the premises, finds that there are no genuine issues of material fact that would preclude the entry of summary judgment. The Court hereby GRANTS summary judgment in favor of the Defendants Verkler and American Casualty and DENIES Plaintiff ModuForm's summary judgment motion.

Record at 544–45. ModuForm appeals from that decision.

## DISCUSSION AND DECISION

### Standard of Review

When reviewing the trial court's ruling on a motion for summary judgment, this court applies the same standard as the trial court. *L.E. Serv., Inc. v. State Lottery Comm'n of Indiana*, 646 N.E.2d 334, 339 (Ind.Ct.App.1995), *trans. denied.* Summary judgment is appropriate if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). When reviewing cross-motions for summary judgment, the inquiry remains the same: whether a genuine issue of material fact exists which requires resolution by the trier of fact. *L.E. Serv., Inc.*, 646 N.E.2d at 339. When the parties do not dispute the facts material to the claim, our task is to determine whether the trial court correctly applied the law to the undisputed facts. *Id.*

### Final Completion and Acceptance

ModuForm contends that it has satisfied all the requirements of Indiana Code § 36–1–12–13.1 for bringing a lawsuit against American Casualty and Verkler. This statute provides in part:

(d) *A person to whom money is due for labor performed, material furnished, or*

*services provided shall, within sixty (60) days after the completion of the labor or service, or within sixty (60) days after the last item of material has been furnished, file with the board signed duplicate statements of the amount due.* The board shall forward to the surety of the payment bond one (1) of the signed duplicate statements. However, failure of the board to forward a signed duplicate statement does not affect the rights of a person to whom money is due. In addition, a failure to forward the statement does not operate as a defense for the surety.

(e) An action may not be brought against the surety until thirty (30) days after the filing of the signed duplicate statements with the board. If the indebtedness is not paid in full at the end of that thirty (30) day period the person may bring an action in court. *The court action must be brought within sixty (60) days after the date of the final completion and acceptance of the public work.*

IND.CODE § 36–1–12–13.1(d), (e) (emphasis added). Generally, a board contracting for public work is required to withhold sufficient monies from the contractor to pay subcontractors, laborers, material suppliers, and those performing services. *Indiana Carpenters Cent. and W. Indiana Pension Fund v. Seaboard,* 601 N.E.2d 352, 357 (Ind.Ct.App. 1992), *trans. denied.* Accordingly, the board is required to withhold the contractor's final payment until the contractor has paid these several persons. *Id.* If a subcontractor desires payment from the board, out of funds retained by the board, the subcontractor must file a claim with the board within 60 days of the date that entity last performed labor, furnished material, or rendered service. *Id.* at 359. If payment is not made, or is not made in full, the subcontractor has until 60 days after the last labor or service is performed, or the last item of material furnished by any subcontractor, material provider, service performer, or laborer, to seek payment from the surety by filing duplicate statements of the amount due with the board, and then must wait 30 days before initiating an action against the surety. *Id.* In all events, the court action must be brought within 60 days after the date of the final

completion and acceptance of the public work. *Id.* at 358; IND.CODE § 36–1–12–13.1(e). Here, the undisputed facts show that Jasper Seating completed delivery of materials to the Project on October 15, 1993. "A subcontractor ... will not necessarily know within sixty (60) days of the date of [its] last labor or services or material whether [its] claim will be paid. Therefore, the 60 day period for filing duplicate statements of an amount due, in order to seek payment from the surety, must commence at a later time than the commencement of the sixty (60) day period within which a claim for payment commences." *Indiana Carpenters Cent. and W. Indiana Pension Fund,* 601 N.E.2d at 358. Accordingly, to pursue a claim against American Casualty, as surety, ModuForm had 60 days from October 15, 1993, within which to file duplicate statements of the amount due with the board. IND.CODE § 36–1–12–13.1(d).

On October 13, 1993, ModuForm filed its duplicate statements with the Project Owner. Not only did ModuForm file its duplicate statements within the 60 days from the final completion of work on the project, ModuForm filed its duplicate statements before Jasper Seating had completed its work. Accordingly, ModuForm satisfied the requirements of Indiana Code § 36–1–12–13.1(d). In further compliance with Indiana law, ModuForm then filed suit against American Casualty on November 17, 1993, more than 30 days after the filing of the signed duplicate statements with the project owner. *See* IND. CODE § 36–1–12–13.1(e) (an action may not be brought against surety until 30 days after filing of signed duplicate statements with the board).

Still, American Casualty and Verkler assert that ModuForm did not satisfy the requirement of Indiana Code § 36–1–12–13.1(e) that the court action "be brought within sixty (60) days after the date of the final completion and acceptance of the public work." They assert that final completion and acceptance occurred on May 10, 1993, when the Project Owner President, Project Owner Secretary, architect, and board of commissioners signed an affidavit stating that the Project "has been completed and was ready

for occupancy." Record at 107. ModuForm counters that the phrase "final completion and acceptance" is the date that the project is actually completed, which ModuForm contends occurred on October 15, 1993, when Jasper Seating completed its delivery of materials to the Project.

■ The interpretation of a statute is a question of law reserved for the courts. *Robinson v. Zeedyk*, 625 N.E.2d 1249, 1251 (Ind.Ct.App.1993), *trans. denied.* It is our objective in statutory construction to determine and implement the intent of the legislature. *Id.* Statutes must be construed to give effect to legislative intent, and courts must give deference to such intent whenever possible. *Indiana State Police Dep't v. Turner*, 577 N.E.2d 598, 601 (Ind.Ct.App.1991), *trans. denied.* Where possible, every word must be given effect and meaning, and no part is to be held meaningless if it can be reconciled with the rest of the statute. *Spaulding v. International Bakers Serv., Inc.*, 550 N.E.2d 307, 309 (Ind.1990).

■ The question of what constitutes "final completion and acceptance" under Indiana Code § 13–1–12–13.1(e) is a question of first impression. Specifically, we are asked to determine what constitutes the "final" completion of a public work project. Undefined words are given their plain, ordinary and usual meaning. IND.CODE § 1–1–4–1(c). Courts may consult English language dictionaries to ascertain the plain and ordinary meaning of a statutory term. *Ashlin Transp. Serv., Inc. v. Indiana Unemployment Ins. Bd.*, 637 N.E.2d 162, 167 (Ind.Ct. App.1994). Final is defined as "forming or occurring at the end; concluding; last; pertaining to or constituting the end result of a process or procedure." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 492 (1981). Thus, "final completion and acceptance" requires the project to be at its end. That is, all of the work under the original contract on the project must be finished before "final completion and acceptance" can occur. This includes the delivery and installation of the furniture included in

the original contract, typically among the last work to be done.

■ The legislative purpose of the statute which is to provide for the payment of contractors, laborers, material suppliers, and those who perform services for public work projects. *See Indiana Carpenters Cent. and W. Indiana Pension Fund*, 601 N.E.2d at 357 (statute designed to provide for payment of laborers who perform services for public work projects). If a declaration of final completion occurs before the project has actually been finished, the rights of those parties who are still providing labor and materials to the project could be cut off. This would circumvent the purpose of the statute which is to secure payment for those who provide materials and labor to public work projects. *Id.* The statute mandates this relief because mechanic's liens are not available to a claimant who works on public work projects. *Id.*

■ We do not agree with Verkler and American Casualty that the May 10, 1993, affidavit constitutes a declaration of "final completion and acceptance." The affidavit states that the "building ... has been completed and was ready for occupancy on the 10th day of May, 1993." This statement satisfies the statutory definition of "substantial completion" which is defined as:

> the date when the construction of a structure is sufficiently completed, in accordance with the plans and specifications, as modified by any complete change orders agreed to by the parties, so that it can be occupied for the use for which it was intended.

IND.CODE § 36–1–12–1.2(12). The affidavit does not state that the project has reached "final completion." [2] A declaration that the project has been completed and is ready for occupancy is not equivalent to a declaration that the project has reached final completion and acceptance.

■ Even assuming that the affidavit declared the final completion and acceptance of the project, we cannot agree for summary judgment purposes that the project had been completed on that date, because there is

---

2. It is only the subsequent affidavit of Joseph Davis, prepared for litigation, that indicates the

affiants intended May 10, 1993, to be the date of final completion and acceptance of the project.

evidence in the record to indicate that not all work on the contract had been performed. Here, ModuForm submitted evidence that the date designated by the Project Owner as the final completion date was not, in fact, the date the Project had been completed. ModuForm submitted an affidavit by Gary R. Smith, the construction manager on the Project, which states that 44 Item 26 chairs had not been delivered to the project by July 30, 1993, and that "Verkler indicated that Jasper Seating delivered the remaining Item 26 chairs on October 15, 1993." Record at 169. Although a portion of the affidavit contains inadmissible hearsay, admissible evidence from the affidavit would support a finding and conclusion that the Project had not been completed by May 10, 1993. Further, had the chairs not been delivered, there would have been a breach of the original contract.[3]

Verkler and American Casualty argue that whether there has been a "final completion and acceptance" of a project requires a subjective determination for purposes of triggering other actions and requirements and is not susceptible to an exact, objective determination. Brief of Appellee at 10—11. To support this contention, Verkler and American Casualty direct us to other statutes, such as Indiana Code § 36–1–12–14, which requires the board to determine both when the work is 50% complete and when the work is substantially complete. See IND.CODE § 36–1–12–14(c), (c)(1).

We agree with Verkler and American Casualty that "substantial completion" and "50% completion" are subjective determinations as contemplated under that statute. In this case, however, the statute does not direct the Project Owner to declare when the project has been finally completed and accepted. In other words, the Project Owner was not charged by statute with making that determination in order to trigger the 60–day period. When a project owner declares a "final completion and acceptance" date, that declaration serves as prima facie evidence of the date of final completion and acceptance under Indiana Code § 36–1–12–13(e). However, where there is evidence in the record to rebut the final completion and acceptance date declared by the project owner, that date may not be conclusive.

Further, here, the affidavit upon which the Project Owner relies was placed in a file, and there is no evidence that persons providing labor or materials were given notice that the project was deemed completed and that the 60–day period had begun to run. Thus, the persons most directly affected by the declaration were not informed about it. The legislature could not have intended such a result.[4]

As we have previously stated, when interpreting a statute, every word is to be given effect and meaning. By using the word "final," the legislature intended to provide laborers with 60 days from the actual completion of the project to bring suit. Had the legislature intended to require only substantial completion of the project, or any lesser degree of completion than "final completion," it would have used those terms in this statute as it did in Indiana Code § 36–1–12–14(c)(1), (c)(2).[5] See Dow–Par, Inc. v. Lee Corp., 644

---

**3.** For purposes of this statute, the project owner is not precluded from declaring the final completion and acceptance when the only remaining work consists of minor "punch list" items. We recognize a distinction between labor or materials required to be performed or delivered under the original contract, as in this case, and work of a de minimis nature done on a "call back" basis in order to complete or correct work previously done.

**4.** A mechanic's lien may be acquired under Indiana Code § 32–8–3–3(a) which provides that, "any person who wishes to acquire a lien upon any property, whether the claim is due or not, shall file in the recorder's office of the county at any time within sixty (60) days after performing labor ... a sworn statement in duplicate of the

person's intention to hold a lien upon the property for the amount of the claim." Under the statute the laborer knows that the 60–day time period begins to run from the last day he worked on the project.

**5.** Indiana Code § 36–1–12–14 states in part:

(b) A board that enters into a contract for public work, and a contractor who subcontracts parts of that contract, shall include in their respective contracts provisions for the retainage of portions of payments by the board to contractors, by contractors to subcontractors, and for the payment of subcontractors. Either the board or contractor, or both, shall place the retainage in an escrow account, with a bank, savings and loan institution, or the state as the escrow agent. The escrow agent

N.E.2d 150, 154 (Ind.Ct.App.1994) (legislature is presumed to be aware of existing statutes on same subject), *trans. denied.*

The evidence presented by ModuForm indicates that work had been performed on the project after May 10, 1993. Therefore, we reverse the trial court's grant of summary judgment in favor of Verkler and American Casualty and remand this case to the trial court for further adjudication not inconsistent with this opinion.

Reversed and remanded.

ROBERTSON and RUCKER, JJ., concur.

shall be selected by mutual agreement between board and contractor or contractor and subcontractor under a written agreement among the bank or savings and loan institution and:
  (1) the board and the contractor; or
  (2) the subcontractor and the contractor.
  (c) To determine the amount of retainage to be withheld, the board shall:
  (1) withhold no more than ten (10%) of the dollar value of all work satisfactorily completed until the public work is *fifty percent (50%) completed,* and nothing further after that; or

  (2) withhold no more than five percent (5%) of the dollar value of all work satisfactorily completed until the public work is *substantially completed.*
If upon substantial completion of the public work minor items remain uncompleted, an amount computed under subsection (l) of this section shall be withheld until those items are completed.
(emphasis added).