NOBLE COUNTY BOARD OF COMMIS-
SIONERS and Noble County Building
Department, through Richard A. Adair,
its Building Inspector, Appellants–
Plaintiffs,

v.

Dennis Wayne FAHLSING, a/k/a
Dennis Wayne; Fahlsing,
Appellee–Defendant.

No. 57A04–9806–CV–278.

Court of Appeals of Indiana.

July 21, 1999.

Rehearing Denied Oct. 7, 1999.

Phillip A. Renz, Monica S. Weaver, Miller Carson Boxberger & Murphy LLP, Fort Wayne, Indiana, Attorneys for Appellants.

Dennis Wayne Fahlsing, Avilla, Indiana, Appellee Pro Se.

## OPINION

NAJAM, Judge

### STATEMENT OF THE CASE

In November of 1996, the Noble County Board of Commissioners and the Noble County Building Department (collectively "the County") filed a complaint for a temporary restraining order, preliminary injunction, permanent injunction and damages against Dennis Wayne Fahlsing ("Fahlsing").[1] In the complaint, the County sought to enjoin Fahlsing from completing construction of a structure on his property without a building permit. In December of 1996, Judge Robert C. Probst entered a temporary restraining order against Fahlsing. Thereafter, both Fahlsing and the County filed various motions. In October of 1997, Judge Probst disqualified himself and appointed Judge George E. Brown as special judge. Following a status conference, Judge Brown determined that the structure was exempt from the County building codes pursuant to Indiana Code Section 136–7–8–3(d) and reversed the December 1996 temporary restraining order against Fahlsing. The County appeals the trial court's decision, and Fahlsing cross-appeals.

We affirm in part, reverse in part and remand.

### ISSUES

The County presents one issue for review, and in his cross-appeal, Fahlsing raises two additional issues. We restate the issues as:

1. Whether the trial court erred when it determined that Fahlsing's structure falls within the "home exemption" established by Indiana Code Section 36–7–8–3(d).

2. Whether the trial court erred when it found that regardless of the home exemption, the County has authority to inspect the structure pursuant to Indiana Code Section 36–7–2–3.

3. Whether the trial court abused its discretion when it denied Fahlsing's motion to reconsider an award of attorney's fees in favor of the County.

---

1. Fahlsing states that he is a Private Christian American national and that his proper Christian appellation is "Dennis Wayne; Fahlsing." To the extent that Fahlsing also objects "to the jurisdiction of the trial court displaying an American Flag of War," we conclude that Fahlsing does not present cogent argument or cite to authority in support of his contention. Therefore, he has waived consideration of that issue. Ind. Appellate Rule 8.3(A)(7); *Flynn v. State,* 702 N.E.2d 741 (Ind.Ct.App.1998), *trans. denied.*

## FACTS

In the fall of 1996, Fahlsing and some friends began building a structure on farmland he owned located near State Road 3 in Noble County. There is no other building or structure on the land, and Fahlsing's residence is located on property approximately three miles away. Fahlsing does not own the property surrounding the parcel on which the structure stands.

Fahlsing did not apply to the County for a building permit, but he did apply for and obtained an electrical services permit. On that application, Fahlsing stated that the present use of the structure was a "shop and warehouse." He also listed "self" as the contractor and attached a handwritten letter notifying the County that he was claiming a building permit exemption under Indiana Code Section 36–7–8–3(d).

In November of 1996, Noble County Building Inspector Richard Adair observed the structure on Fahlsing's property, a van bearing the letters "AO" or "AJ" or "JO Smith Construction" and several individuals working on the structure. Adair was concerned that the structure was being built in a "careless manner" and issued a stop work order instructing Fahlsing to stop construction. Fahlsing posted "No Trespassing" signs on his property and continued construction. The County then sought a preliminary injunction and temporary restraining order against Fahlsing, which Judge Probst issued. After Special Judge Brown was appointed, the court reversed the temporary restraining order against Fahlsing. Specifically, Judge Brown determined that the structure was an accessory to Fahlsing's residence and, thus, was subject to the home exemption under Indiana Code Section 36–7–8–3(d). The County filed a motion to correct error, which the trial court denied.

## DISCUSSION AND DECISION

### Issue One: Home Exemption Under Indiana Code Section 36–7–8–3(d)

■ The County argues that Fahlsing's structure is not subject to the home exemption provision of Indiana Code Section 36–7–8–3(d) and that the trial court's reversal of the temporary restraining order is erroneous. Specifically, the County maintains that the home exemption provision does not include accessory structures and that, even if it did, the structure does not qualify as an accessory structure. We address the County's arguments in turn.

■ The interpretation of a statute is not a question of fact but one of law reserved for the courts. *Robinson v. Zeedyk,* 625 N.E.2d 1249, 1251 (Ind.Ct.App.1993), *trans. denied.* Our objective when construing the meaning of a statute is to ascertain and give effect to the legislative intent expressed in the statute. *Chavis v. Patton,* 683 N.E.2d 253, 257 (Ind.Ct.App.1997). Where possible, every word must be given effect and meaning, and no part is to be held meaningless if it can be reconciled with the rest of the statute. *Moduform, Inc. v. Harry H. Verkler Contractor, Inc.,* 681 N.E.2d 243, 248 (Ind.Ct.App.1997), *trans. denied.* Undefined words are given their plain, ordinary and usual meaning, IND.CODE § 1–1–4–1(c), and courts may consult English language dictionaries to ascertain the plain and ordinary meaning of a statutory term. *Moduform,* 681 N.E.2d at 248. Still, the legislative intent as ascertained from the whole prevails over the strict, literal meaning of any word or term used therein, and we presume that the legislature intends for this court to apply language in a logical manner consistent with the statute's underlying policy and goals. *Chavis,* 683 N.E.2d at 257.

In *Rogers v. Noble County,* 679 N.E.2d 158, 162–63 (Ind.Ct.App.1997), *trans. denied,* we held that Noble County enacted its Building Code pursuant to Indiana Code Section 36–7–8–3, which provides:

(a) The legislative body of a county having a county department of buildings or joint city-county building department may, by ordinance, adopt building, heating, ventilating, air conditioning, electrical, plumbing, and sanitation standards for unincorporated areas of the county. These standards take effect only on the legislative body's receipt of written approval from the fire prevention and building safety commission.

(b) An ordinance adopted under this section must be based on occupancy, and it applies to:

   (1) the construction, alteration, equipment, use, occupancy, location, and maintenance of buildings, structures, and appurtenances that are on land or over water and are:

      (A) erected after the ordinance takes effect;

      (B) if expressly provided by the ordinance, existing when the ordinance takes effect;

   (2) conversions of buildings and structures, or parts of them, from one occupancy classification to another; and

   (3) the movement or demolition of buildings, structures, and equipment for the operation of buildings and structures.

(c) The rules of the fire prevention and building safety commission are the minimum standards upon which ordinances adopted under this section must be based.

*(d) An ordinance adopted under this section does not apply to private homes that are built by individuals and used for their own occupancy.*

(emphasis added).

In *Robinson v. Monroe County,* 658 N.E.2d 647, 650–51 (Ind.Ct.App.1995), this court first construed Indiana Code Section 36–7–8–3 and concluded that the clear legislative purpose of the statute was to ensure safe buildings. We also determined, however, that "[s]ubsection (d) represents an exception to the safety-oriented requirements set forth elsewhere in the statute and thus is contrary to the purpose of the statute." *Id.* at 650. Explaining the rationale for such an exemption, we stated:

We can conceive of only one purpose which could justify allowing a builder to circumvent certain applicable building safety ordinances when he builds a house which he will occupy. In its early stages, this country's frontier was moved westward by pioneers who moved onto land and built houses by hand. Since then, home owning has become an essential facet of the "American dream." It may be that ordinances such as those contemplated by

IC 36–7–8–3, which establishes construction specifications and require[s] permits and inspections for residential construction projects, interfere with the ability of some individuals to build their own home and thus to pursue the American dream.

Building codes and ordinances may conceivably discourage or impede such individuals from building their own houses. A private individual building his own house may not possess the skills necessary to construct a building which complies with the technical specifications set out in the ordinances. In addition, an individual may not be able to afford to hire professionals or others to build a house.

*Id.* at 651.

In *Robinson,* there was no question that the structure at issue was to be used as the person's residence and, thus, the structure was a "home" in its most traditional sense. In this case, however, Fahlsing does not argue that the structure is a residence. Fahlsing informed the County on his electrical services permit that the structure was a "shop or warehouse." In its order, the trial court determined that the home exemption provision is not limited to persons who build residences. Specifically, the court reasoned:

In reviewing I.C. 36–7–8–3(d), it is interesting to note that the legislature chose to use the word "homes" rather than "houses" in describing exempt structures. Clearly a house is a building while a home seems to imply something more. One's home certainly includes his house, but should also include accessory structures, such as those described in I.C. 22–12–1–5 which are used and occupied by the owner and his family. By way of illustration, if an individual was constructing a house with an attached garage for his own occupancy, there is little doubt that the house and garage would meet the exemption requirements of I.C. 36–7–8–3(d). It would seem illogical to hold that if the individual chose to construct a house with a detached garage, the garage under those circumstances would not be part of his home, and not meet the same exemption.

    The legislature provided no definition of "private home" and, thus, we shall apply

the plain, ordinary and usual meaning. *See* IND.CODE § 1–1–4–1(c). The word "home" has multiple meanings depending on the context in which it is used. For example, "home" can mean "a place where one lives; a residence" or "a headquarters; a home base." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 864 (3d ed.1992). If the legislative purpose behind the home exemption provision were to allow, without a permit, individuals who cannot afford to pay professionals to construct their own homes, we can discern no logical reason why the legislature would allow them to do so only when constructing the actual physical structure in which they will dwell. Building a house, which requires plumbing, heating and electrical wiring, can be far more complex than building a personal garage, barn, shop or warehouse. The broad meaning of "home," combined with the legislative purpose behind the adoption of subsection (d), leads us to conclude that "private home" is not limited to the physical structure used as a person's residence.

In this case, however, Fahlsing's warehouse is located three miles away and on a separate plot of land from his residence. Fahlsing refers to his property as a "homestead" and asserts that, despite the distance between his residence and the warehouse, the home exemption provision still applies. We must disagree.

The American Heritage Dictionary of the English Language defines "homestead" as "a house, especially a farmhouse, with adjoining buildings and land." *Id.* at 865. Similarly, our legislature has defined "homestead" for property taxation purposes as "an individual's principal place of residence which ... consists of a dwelling and the real estate, not exceeding one (1) acre, that immediately surrounds the dwelling." IND.CODE § 6–1.1–20.9–1(2)(C); *see also* IND. ADMIN. CODE tit. 50, r. 2.2–4–1(9) ("Homesite" for real property assessment means a land area of one acre per residential site on a parcel containing one or more acres). Implicit in these definitions is that the land, residence and any accessory building must be contiguous. Indeed, the Indiana Administrative Code defines "accessory structure" as "a building, the use of which is incidental to that of the main building and which is located on the same lot." IND. ADMIN. CODE tit. 675, r. 14–4–1. We agree with the trial court's finding that "private home," as used in the home exemption provision, includes accessory structures. Nevertheless, we decline to expand the term "private home" beyond accessory structures which are located in proximity, incidental to and within the same site as the primary residence. Therefore, we reverse the trial court's decision to revoke the preliminary injunction and restraining order previously entered against Fahlsing and remand with instructions that the injunction be reinstated.

### Issue Two: Inspection Under Indiana Code Section 36–7–2–3

In his cross-appeal, Fahlsing argues that the trial court erred when it determined that the County was authorized to inspect the structure at any reasonable time pursuant to Indiana Code Section 36–7–2–3. Specifically, Fahlsing contends that to allow inspection of his structure after a finding that the home exemption applies violates his constitutional rights under the Fourth Amendment to the United States Constitution. We disagree.

We first address the relationship between Indiana Code Section 36–7–2–3 and Indiana Code Section 36–7–8–3. Indiana Code Section 36–7–2–3 permits units [2] to inspect any structure or improvement at any reasonable time. On the other hand, Indiana Code Section 36–7–8–3 allows a county to adopt, by ordinance, minimum standards for the construction of all buildings in unincorporated areas. *Rogers,* 679 N.E.2d at 161. A plain reading of the statutes shows that they differ significantly in application. Although the purpose of both statutes is to ensure public safety, Indiana Code Section 36–7–2–3 provides units, including but not limited to counties, with a broad power to inspect, at any reasonable time and without geographic limitation, any structure or other improvement. Indiana Code Section 36–7–8–3, however, applies only to counties and allows counties to

---

**2.** Chapter 2 applies to all units except townships.　　IND.CODE § 36–7–2–1.

establish by ordinance specific and limited standards for those structures built in unincorporated areas. In addition, we held in *Robinson* that the home exemption provision under Indiana Code Section 36–7–8–3(d) only creates an exemption from the requirements set out in Section 3. *Robinson,* 658 N.E.2d at 652. Thus, we reject Fahlsing's contention that the trial court erred when it determined that his structure was subject to inspection by the county under Indiana Code Section 36–7–2–3.

■ We also disagree with Fahlsing's assertion that inspection of his structure under Indiana Code Section 36–7–2–3 violates his Fourth Amendment rights. The Fourth Amendment to the United States Constitution establishes the right of persons to be secure in their persons, houses, papers and effects, and guards against unreasonable searches and seizures. *Starzenski v. City of Elkhart,* 659 N.E.2d 1132, 1138 (Ind.Ct.App. 1996), *trans. denied.* Absent consent or exigent circumstances, a private home may not be entered to conduct a search or effect a seizure without a warrant. *Id.* This protection has been extended to unreasonable searches and seizures of property in the civil context. *Id.* (citing *Soldal v. Cook County, Ill.,* 506 U.S. 56, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992)).

Indiana Code Section 36–7–9–16(b) provides that if an owner of a structure or building refuses inspection, the inspection officer may obtain an inspection warrant in order to determine if the building is unsafe. Under the inspection warrant statute, the person seeking the warrant must show that probable cause exists to believe the building is in an unsafe condition justifying the search. *Id.* The trial court's findings in this case do not purport to void the inspection warrant requirement. As a result, if Fahlsing refuses to allow the county to inspect the structure for its safeness, the county may then obtain an inspection warrant pursuant

to Indiana Code Section 36–7–9–16. We find no Fourth Amendment violation.

### Issue Three: Attorney's Fees

■ Finally, Fahlsing asserts that the trial court abused its discretion when it denied his motion to set aside attorney's fees.[3] He contends that because he was "wrongfully enjoined," he is "entitled to be made whole."

■ In any civil action, the trial court may award attorney's fees as part of the cost to the prevailing party, if it finds that either party: (1) brought the action in defense of a claim that is frivolous, unreasonable or groundless; (2) continued to litigate the action or defense after the party's claim or defense became frivolous, unreasonable or groundless; or (3) litigated the action in bad faith. IND.CODE § 34–1–32–1(b).[4] The decision of the trial court to award fees is reviewed under an abuse of discretion standard. *Nelson v. Marchand,* 691 N.E.2d 1264, 1269 (Ind.Ct.App.1998). In the absence of an affirmative showing of error or abuse of discretion, we must affirm the trial court. *Campbell v. El Dee Apartments,* 701 N.E.2d 616, 621 (Ind.Ct.App.1998).

After Judge Probst granted the County's petition for a temporary restraining order against Fahlsing, Fahlsing filed a document entitled "Declaration, Recognition of Solemn 'Mixed War' First Amendment Petition for Redress of Grievances Notice to All Bonding and Malpractice Carriers." In that pleading, Fahlsing purported to hold a lien against property owned by the County Commissioners and the County's attorney. In response, the County filed its Motion for Sanctions and Release of Lien in which it sought attorney's fees pursuant to Indiana Code Section 34–1–32–1. After a hearing, the trial court determined that none of the individuals named in Fahlsing's pleading was indebted to him, that Fahlsing was not entitled to a mechanic's or other statutory lien and that no court had entered judgment in favor of Fahlsing and against the County or its Commissioners. As a result, the court found that Fahlsing

---

3. Fahlsing filed his motion to set aside the award of attorney's fees, and Judge Brown took the motion under advisement. Judge Brown failed to rule on the motion and, thus, it was deemed denied under Indiana Trial Rule 53.4(B).

4. Now codified at Indiana Code Section 34–52–1–1.

filed the document in bad faith, that it was frivolous and had no basis in law or fact. The court then awarded the County $5,648.50 in attorney's fees.[5]

On appeal, Fahlsing argues that the award of attorney's fees constitutes an abuse of discretion because the court's temporary restraining order was reversed and the attorney's fees award was a result of the "vigorous defense" of his property rights. Despite Fahlsing's claim, the subsequent reversal of the court's restraining order has no bearing on the award of attorney's fees. The court determined that the County was entitled to attorney's fees solely on the basis of the lien Fahlsing filed, an action which clearly had no basis in law.

We have no doubt that Fahlsing worked diligently in order to have Judge Probst's restraining order reversed, which is no small task for a pro se litigant. Fahlsing's ultimate success, however, does not excuse his deliberate filing of a bogus lien against the property of persons who owed him no legal obligation. Fahlsing has not shown an abuse of discretion.

Affirmed in part, reversed in part and remanded with instructions.

GARRARD, J., and KIRSCH, J., concur.

---

**5.** In its order, the trial court divided the $5,648.50 award among the three attorneys involved in the action.